JOHN DEERE INDUSTRIAL EQUIPMENT CO., APPELLANT, *v.*
GENTILE ET AL., APPELLEES.

(No. 45610—Decided May 31, 1983.)

*Mr. Steven E. Wolkin,* for appellant.

*Mr. Thomas L. Colaluca,* for appellees.

*Mr. Louis Gentile, pro se.*

JACKSON, J. This is an appeal from a decision of the court of common pleas directing a verdict in favor of defendants-appellees, Gloria and Leslie Gentile.

Plaintiff-appellant, John Deere Industrial Equipment Co., brought this action to reform a deed and obtain foreclosure upon property at 2665 Ridgewood Drive, in Parma, Ohio.

Gloria Gentile is the mother of defendants Leslie and Louis Gentile. She purchased the home located at 2665 Ridgewood Drive for $36,500 in 1969. She paid $20,000 down, and financed the remainder by obtaining a private mortgage for $16,500. In 1977, while she and her husband were obtaining a divorce, foreclosure proceedings were brought against the property.

At that time, there was approximately $28,000 in liens and taxes on the property. Gloria Gentile attempted to obtain a loan for $30,000, but was unsuccessful

because she was unemployed at the time. Upon the advice of her attorney, and with the knowledge and consent of the loan officer at the bank, she transferred title to the property to two of her four children, Louis and Leslie, who were employed, and the mortgage loan was executed in their favor. However Mrs. Gentile testified that she made all the payments on the mortgage, and that legal title was transferred to her son and daughter solely to obtain the loan from the bank. She stated that the transfer of title was not a sale or a gift to her children, and that she considered herself to be the owner of the property at all times.

Leslie Gentile corroborated her mother's testimony in all respects. She stated, "My name appears on the deed, but the house is owned by my mother." She testified that she signed for the loan purely as an accommodation to her mother, and that she would convey her one-half interest in the property back to her mother whenever her mother should find that convenient.

Defendant Louis Gentile purchased a backhoe from appellant in 1979. He stated on his application for credit that he owned the residence at 2665 Ridgewood Drive. (In fact, at this time he had a one-half undivided interest in the property, according to the record legal title.) Appellant did not take any interest in the residence as collateral. Of three checks issued by Louis to appellant, only one was honored by the bank upon which it was drawn. On August 12, 1980, shortly before leaving town, Louis reconveyed to his mother his interest in the residence on Ridgewood Drive, by quitclaim deed.

Appellant instituted this lawsuit against Louis Gentile to recover the amount owed on the contract for the backhoe. Gloria and Leslie Gentile were named as parties, so that the deed of August 12, 1980, could be declared a fraudulent conveyance, title reinstated in Louis, and foreclosure ordered, at least as to his purported one-half interest in the property.

Louis did not answer the complaint and a default judgment was taken against him. This matter went to trial against Gloria and Leslie Gentile. It was stipulated by the parties that Louis Gentile owed appellant $28,000 for the backhoe. An agent of appellant testified as to the execution of the contract, the amount of the arrearage, and the unsuccessful efforts made to locate Louis Gentile after he defaulted on his obligation. Appellant also called Gloria and Leslie Gentile as on cross-examination.

The final evidence submitted by appellant was an exhibit showing that two other judgments had been taken against Louis Gentile before he conveyed his interest in the property back to his mother in August 1980. Mason Structural Steel, Inc. took a judgment for $603.47 on March 24, 1980, and Crawford Door of Cleveland, Inc. took a judgment on April 23, 1980 for $1,292.63. Another judgment was taken against Louis Gentile in 1981 by Sears Roebuck and Co. in the amount of $767.47. Gloria Gentile testified that the Sears Roebuck bill was actually the responsibility of Louis' girlfriend, Jill Anderson. The Crawford Door judgment was satisfied on or before August 13, 1980, prior to the execution of the quitclaim deed by Louis on behalf of his mother, and before he left town.

Appellant contends in its second assignment of error that the trial court erred in admitting evidence regarding the nature of the original conveyance from Gloria Gentile to her children, and that it erred in admitting evidence that the machinery was covered by insurance. In its first assignment of error, appellant contends that the court erred in directing a verdict in favor of Gloria and Leslie Gentile. The second assignment of error is considered first.

I

Appellant contends that the parol evi-

dence rule bars testimony concerning the nature of the interest taken by Louis Gentile, as a result of the 1977 conveyance of the property to him and his sister from their mother.[1] Appellant's motion *in limine* to prevent the introduction of this evidence was overruled. It was the contention of the appellees that Louis and Leslie, though invested with legal title in the property, merely held the property in trust for their mother.

The parol evidence rule excludes evidence of prior or contemporaneous statements contradicting or varying the terms of a written deed or contract, which is complete and unambiguous on its face. *Charles A. Burton, Inc.* v. *Durkee* (1952), 158 Ohio St. 313 [49 O.O. 174]. This rule has no application in a case such as the one at bar, where a party seeks to prove that the transaction was not intended to convey a beneficial interest in the property.

"That parol testimony is admissible to show that a deed purporting to have been made for a stated consideration in money, was in fact made without consideration, and that the grantee held the lands in trust for the grantor." (*Ryan* v. *O'Connor* [1884], 41 Ohio St. 368, paragraph four of syllabus.)

Consequently, it was not error for the court to admit this evidence.

The attorney for appellees, during cross-examination of an agent of appellant, asked whether the machinery sold to Louis was covered by insurance. Normally, evidence of insurance or other third-party indemnification is barred by the collateral source rule, and may justify reversal on appeal or the declaration of a mistrial. *Pryor* v. *Webber* (1970), 23 Ohio St. 2d 104 [52 O.O.2d 395]; *Suchy* v. *Moore* (1972), 29 Ohio St. 2d 99 [58 O.O.2d 194].

In the case at bar, however, the cause was withdrawn from consideration by the jury and was determined upon a directed verdict by the trial court. The evidence regarding insurance was immaterial to the court's determination. Therefore, appellant was not prejudiced by the raising of this subject, and its interjection into this case is not prejudicial error requiring reversal. Appellant's second assigned error is overruled.

## II

The trial court found in favor of appellees for two separate and independent reasons. First, the court found that appellant had not introduced sufficient evidence to make out a prima facie case that Louis Gentile had acted with fraudulent intent or that he was insolvent when he conveyed back to his mother his one-half interest in her residence. Second, the court found that, as a matter of law, Louis Gentile never had a beneficial interest in the residence, but that he held it in trust for his mother under a resulting trust.[2]

Civ. R. 50(A)(4) defines the circumstances under which a motion for a directed verdict may be granted:

---

[1] Assignment of Error No. 2

"The trial court erred in not granting a new trial.

"A. The court erred in allowing testimony contradicting or varying, facts, surrounding the negotiation, the making, signing, the transfer or evidence to vary or to contradict the terms of properly recorded deeds not at issue.

"B. The court erred in allowing testimony of insurance coverage of the machinery which was the subject of the complaint."

[2] Assignment of Error No. 1

"The trial court erred in directing a verdict in favor or [sic] defendants Leslie Gentile and Gloria Gentile.

"A. Construing the evidence on the determinative issues most strongly in favor of plaintiff, reasonable minds could come to but one conclusion upon the evidence submitted and that conclustion [sic] is *not* adverse to plaintiff."

"When a motion for a directed verdict has been properly made, and the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue."

A transaction can be set aside as a fraudulent conveyance whenever it is made without fair consideration and when the conveyance will either render the transferor insolvent, or when the transferor makes the conveyance in order to hinder, delay, or defraud his creditors.[3]

The trial court found that appellant had not introduced sufficient evidence to demonstrate that Louis Gentile was insolvent when he quitclaimed his interest in the Ridgewood property to his mother, and that there was not sufficient evidence that this conveyance was made to hinder or defraud his creditors.

This court is not persuaded that this finding was correct. A reasonable person could conclude from the evidence that Louis was insolvent by August 1980, and that, if he had any beneficial interest in the property on Ridgewood, that he conveyed it to his mother to hinder his creditors.

Louis had claimed in his application to appellant that he owned the real property at issue herein. Two of the three payments that he made to appellant were not honored by his bank. Two judgments

were taken against him in 1980 and one in 1981. His mother testified at her deposition that his business was going bad in August 1980. At trial, she stated that "people were going bankrupt on him, owing him money." She said that "he wanted to leave town while he still had some money from his business." At that time, of course, he still owed $28,000 for the backhoe.

The trial court erred, therefore, in basing its judgment granting a directed verdict on this ground.

The second ground advanced by the trial court for granting a directed verdict to appellees, and for refusing to allow appellant to foreclose upon the Ridgewood property, was that Louis Gentile never owned any beneficial interest in that property. The trial court found, as a matter of law, that Louis Gentile held the property in trust for his mother, in a resulting trust.

The "resulting trust" was defined by the Ohio Supreme Court in *First Natl. Bank of Cincinnati* v. *Tenney* (1956), 165 Ohio St. 513, at 515-516 [60 O.O. 481]:

"A resulting trust has been defined as 'one which the court of equity declares to exist where the legal estate in property is transferred or acquired by one under facts and circumstances which indicate that the beneficial interest is not intended to be enjoyed by the holder of the legal title.' * * * The device has historically been applied to three situations: (1) Purchase-money trusts; (2) instances where an express trust does not exhaust the *res* given to the trustee; and (3) express trusts which fail, in whole or in

---

[3] The fraudulent conveyance statutes are found in R.C. Chapter 1336. R.C. 1336.04 provides:

"Every conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made or the obligation is incurred without a fair consideration."

R.C. 1336.07 provides:

"Every conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present or future creditors."

part." Quoted and followed in *Bivolocki* v. *Marimberga* (1979), 62 Ohio App. 2d 169, at 172 [16 O.O.3d 369].

The type of resulting trust which the court found was created in the case at bar is the "purchase-money trust." As with other types of resulting trusts, a "purchase-money trust" involves a situation where the parties did not expressly create a trust, but where a trust will be implied because this was the intention of the parties. The "purchase-money trust" is succinctly defined in Restatement of the Law, Trusts 2d (1959) 393, at Section 440:

"Where a transfer of property is made to one person and the purchase price is paid by another, a resulting trust arises in favor of the person by whom the purchase price is paid, except as stated in §§ 441, 442, and 444."

A resulting trust also arises in a case such as the case at bar where a person other than the transferee undertakes an obligation to pay the purchase price on credit. Restatement of the Law, Trusts 2d, at Section 456.

It is said that a resulting trust does not arise if the transferee is "a natural object of bounty" of the person who pays the purchase price, *unless* it appears from other evidence that the person who paid the purchase price intended to retain a beneficial interest in the property. Restatement of the Law, Trusts 2d, at Section 442. In other words, the law presumes that a conveyance to an individual's own child without fair consideration is a gift, unless this presumption is overcome by other evidence tending to show that the parent conveyed only the bare legal title, and intended to retain her equitable ownership. This general proposition is described in *Creed* v. *Lancaster Bank* (1852), 1 Ohio St. 1, at pages 9-10:

"The next, and, as we think, the great question in the case, is one of intention. Did John Creed intend his stock as an advancement, or gift, to his children and the others to whom it was given? The rule as to the presumption in such cases is properly laid down by the counsel for the bank, from 2 Maddock's Chancery, 112 — where a person purchases property with his own funds, and places the title in the name of a stranger, the legal presumption is that he made such purchase for his own use, and that the property is held in trust for him. But when such purchase and conveyance is made by a man to a member of his own family, the presumption is the other way, and the property is held to be a gift or advancement. These are, however, mere abstract presumptions that may be rebutted by circumstances or evidence going to show a different intention, and each case has to be determined by the reasonable presumptions arising from all the acts and circumstances connected with it; so that it may happen, that where property is thus purchased and placed in the name of a stranger, the presumption that the law will draw, taking all the circumstances into consideration, will be that the property was intended for and vested absolutely in the person in whose name it was placed. On the other hand, it frequently occurs that property purchased and paid for by the father and placed in the name of a child, even where there is no positive evidence of trust, will be presumed, from the facts connected with it, to be intended for the use of the father, and held in trust for him. Lapse of time, connected with continued acts of recognition of the right of the donee, are always potent, and frequently controlling circumstances in determining a question of intention in a case of this kind."

In the case at bar, appellant concedes that the conveyance by Gloria Gentile in 1977 of her home to her children was made without fair consideration. This court is persuaded that this is the only reasonable conclusion that can be drawn from the evidence adduced at trial. Mrs. Gentile has undertaken to pay the $30,000 mortgage (and a subsequent $5,000 home improvement loan), obtained over her children's signature ostensibly in connec-

tion with their "purchase" of the home.

Once Gloria Gentile demonstrated, by clear and convincing evidence, that it was she who was paying the mortgage, a presumption arose that her children were holding the property in trust for her. Restatement of the Law, Trusts 2d, at Section 458.

It is appellant's contention that the 1977 conveyance was a "gift" from Gloria Gentile to her children. The only evidence adduced supportive of this contention is the fact that Leslie and Louis are her children, thus giving rise to the presumption discussed in *Creed* v. *Lancaster Bank, supra,* that the conveyance was a gift. The presumption that the conveyance was a gift was convincingly rebutted by the circumstances under which the conveyance was made, and by the unchallenged testimony of Gloria and Leslie Gentile as to their intent concerning that transaction.

Mrs. Gentile had purchased the residence in 1969 with her own money. She stood to lose the property in 1977 because, during her divorce proceedings, mortgage payments and taxes had not been paid. She was told by her attorney and a bank officer who was a friend of her attorney that the only way she would be able to obtain a loan quickly to pay off existing liens would be to place record title in the name of her children. Her daughter Leslie confirmed that she had no beneficial interest in her mother's house. Louis Gentile was not available to testify.

The only conclusion that can reasonably be drawn from the foregoing evidence is that a resulting trust arose in favor of Mrs. Gentile, and that neither Leslie nor Louis obtained any beneficial interest in the property.

This court is cautioned by appellant in its reply brief, that the decision in the case at bar may undermine the purpose of statutes which require the recording of deeds to reflect ownership. We acknowledge such an implication. The doctrine of the "purchase-money resulting trust" does conflict with the recording statutes, because equitable ownership does not necessarily follow legal title. This result, under certain circumstances, is unavoidable as long as the resulting trust or other trusts are recognized by the law.

The Restatement of Trusts, however, provides a remedy against the beneficiaries of a resulting trust, for a creditor who relies upon the trustee's apparent ownership of the trust property:

"Where a resulting trust arises from the transfer of property to one person and the payment of the purchase price by another, if a third person extends credit to the trustee in reliance upon his apparent ownership of the trust property, and the beneficiary knew or had reason to know that the trustee was receiving credit because of his apparent ownership, the third person can obtain satisfaction of his claim out of the trust property." (Restatement of the Law, Trusts 2d 434-435, Section 459.)

There was no evidence presented by the appellant that Mrs. Gentile knew or had reason to know that her son Louis had claimed ownership of her residence in applying for credit from appellant. The appellant's first assignment of error is not well-taken

Accordingly, the decision of the trial court is affirmed.

*Judgment affirmed.*

PARRINO, P.J., and ANN MCMANAMON, J., concur.