GABEL et al., Appellants,

v.

RICHLEY, Appellee.

[Cite as *Gabel v. Richley* (1995), 101 Ohio App.3d 356.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 14624.

Decided Feb. 24, 1995.

*Robert V. Spayd,* for appellants.

*Carl Anthony Cramer,* for appellee.

BROGAN, Judge.

Appellants James Gabel and Dale Ravenscraft appeal from the decision of the Montgomery County Court of Common Pleas holding that they have no equitable right to recover insurance proceeds on a certain parcel of real property.

This case arises as a result of several business partnerships and transactions entered into by the parties for the purpose of investing in real estate. In August

1970, three individuals, namely, Ed Lacy, Tom Edge, and appellee Rodney R. Richley, were the sole shareholders of a corporation known as American Properties, Inc. American Properties entered into an agreement to purchase a twenty-acre parcel of agricultural real estate located in Mad River Township from Clara Roudebush for a purchase price of $150,000. The terms of the agreement required a $30,000 down payment, with a note for the balance of $120,000 to be secured by a mortgage and paid in five equal annual installments at six percent interest on the unpaid balance. At closing, American Properties redeeded a portion of the land in three equal shares to the individual shareholders as joint tenants. This practice of transferring ownership to the individual shareholders continued as further annual payments were made.

Richley had difficulty in raising his share of capital necessary for the investment. Richley approached appellant Dr. James Gabel, the veterinarian for his dog, and proposed that they enter into a partnership to share in Richley's one-third investment in the Roudebush property. Gabel and Richley subsequently entered into a written partnership agreement on August 10, 1970. Under the terms of this agreement, Gabel and Richley were to become partners in the business of buying and selling the Roudebush land. The agreement further provided that each would make equal contributions of approximately $5,000 on an annual basis for a period of six years. All net profits arising from the sale of the property would be divided equally. Pursuant to the agreement, Gabel and Richley each made the initial $5,000 down payment on the property.

In August of 1971, Richley was again financially unable to make his annual investment contribution to American Properties. Richley approached appellant Dr. Dale Ravenscraft, for whom Richley provided accounting services, and proposed that they enter into a partnership to share in Richley's one-third investment in the Roudebush property. Ravenscraft agreed, and he and Richley entered into a written partnership agreement. The agreement was similar to the one between Richley and Gabel and provided that the partnership would carry on the business of buying and selling the Roudebush land and that each partner would equally contribute approximately $6,000 annually for a period of five years. The partners would divide the net profits from the sale of the property equally.

Both Ravenscraft and Gabel were aware that Lacy and Edge were involved as the other real estate investors. However, they were unaware of each other's involvement and had no knowledge that Richley had entered into similar partnership agreements with each of them.

At the time that the Gabel and Ravenscraft partnership agreements were made, Richley had planned to sell the property quickly. He and both appellants believed that the property would sell in a short time for a substantial profit. Because of this belief, the parties did not discuss the income and expenses related

to the land ownership. The parties were aware that there were two houses located on the property and that crops were being grown there. However, there was no agreement as to how the crop proceeds or rent would be applied, or how the expenses associated with the property would be paid.

For the next five or six years, Gabel and Ravenscraft made their annual contributions, which Richley applied to the investment. Gabel paid a total of $28,700, while Ravenscraft paid a total of $30,000. After paying the initial $5,000 down payment, Richley did not contribute additional amounts toward the annual investment payment because the amounts contributed by Gabel and Ravenscraft were sufficient to cover his contribution.

Meanwhile, Richley, Lacy, and Edge were acquiring individual deeds as joint tenants to portions of the property as the annual payments were made. When it was time for the last installment, Edge did not want to contribute his one-third payment, so Richley and Lacy each contributed one-half of that payment. Subsequently, the deed to that parcel was transferred to only Richley and Lacy as joint tenants. Richley personally paid $8,475 in that particular transaction.

Over the years, Gabel and Ravenscraft did not participate in the daily management of the property. They occasionally inquired about the property but never requested a formal accounting. They did not pay any expenses associated with the property or receive any income from it. In their pretrial brief, appellants stated that they considered expenses and ordinary income to be outside the scope of the partnership agreement.

Lacy and Richley took care of the day-to-day management of the property. They adhered to an informal arrangement whereby Lacy would collect the rent and pay some of the expenses. Occasionally, Richley would also collect rent and pay expenses. Richley did not ask Lacy for any of the rental money because he considered the amount collected to be minimal and roughly equal to the expenses Lacy was paying.

In 1978, one of the houses on the Roudebush property was destroyed by fire. The Richley–Lacy–Edge group had paid premiums for an insurance policy on the house. The insurance company paid approximately $29,000 for the loss, and Richley received $14,504 of the insurance proceeds. Gabel and Ravenscraft did not know of the loss or of the payment of the insurance proceeds.

In 1988, Gabel and Ravenscraft learned of each other's involvement in the investment. After they confronted Richley, he agreed to transfer his entire record interest in the property to Gabel and Ravenscraft, including title to the extra portion of property purchased when Edge backed out of the last payment. Pursuant to the transfer, Ravenscraft and Gabel became equal owners of Richley's entire record interest in the twenty acres. Gabel and Ravenscraft did not

compensate Richley for his initial $5,000 investment, for the $8,475 he paid for Edge's portion of the last installment, or for any expenses incurred during Richley's ownership.

During the time Richley held title to the property, he paid the following expenses associated with the property: $5,685.46 in real estate taxes, $405 for repairs, $456 for insurance, $234 for utilities, $1,800 for fire cleanup, $693 for engineering fees, and $522.91 in attorney fees. Richley's capital contributions consisted of the $5,000 down payment and the $8,475 payment made in 1975 for Edge's portion of the last installment payment. As income from the property, Richley received a total of $805 in rental income, and $2,720 in farm profit. Additionally, Richley received a $783 deposit from the Meijer corporation, which was interested in purchasing the land, although the deal subsequently fell through. Gabel and Ravenscraft did not participate in the payment of expenses or share in the receipt of income.

The property has since been rezoned as commercial property and has recently been listed for sale at a price of $20,000 per acre. Gabel and Ravenscraft paid approximately $7,000 per acre for the land and thus stand to make a substantial profit on the sale. There is no evidence that the fire decreased the fair market value of the property.

In 1992, Gabel and Ravenscraft learned of the 1978 fire and Richley's receipt of the insurance proceeds as a result of it. They requested that Richley reimburse them for the fire insurance proceeds he received, plus interest. Richley refused to make the payment.

On May 24, 1993, Gabel and Ravenscraft filed a complaint in the Montgomery County Court of Common Pleas seeking recovery of the fire insurance proceeds from Richley under the theory that Richley, as trustee, was holding the fire insurance proceeds for the benefit of Gabel and Ravenscraft. Richley filed an answer and counterclaim seeking reimbursement for the maintenance expenses incurred while he was the record owner of the property.

The case proceeded to a hearing before a referee. On January 28, 1994, the referee filed his report, recommending that judgment be entered in favor of Richley on the complaint, and in favor of Gabel and Ravenscraft on the counterclaim. The referee found that a resulting trust had been created when Richley purchased the property with Gabel and Ravenscraft's money and that Richley was the trustee. He found that the corpus of the resulting trust was the property itself, and that it did not encompass the right to collect the insurance proceeds since none of the appellants' money had been used to pay the insurance premiums. The referee further rejected the appellants' argument that the insurance proceeds represented a partial payment of the value of the property, finding that Richley had a separate insurable interest in the property and that

there was no proof that the property value was diminished by the fire. Finally, after noting that Richley did not appear to be pursuing his counterclaim at the hearing, the referee found that Richley's counterclaim was without merit because it was barred by the statute of limitations and because the partnership agreements did not require contribution for expenses.

Gabel and Ravenscraft filed objections to the referee's report, but did not file a transcript of the proceedings with the trial court. Richley filed a response to the objections. On May 16, 1994, the trial court overruled the objections, adopted the referee's report, and entered judgment in favor of Richley. Gabel and Ravenscraft filed a timely notice of appeal.

As their sole assignment of error, Gabel and Ravenscraft assert that the trial court erred in adopting the report of the referee. In support of this assignment of error, appellants argue that Richley was a constructive trustee rather than a resulting trustee, that he had no separate insurable interest in the property, and that the amount of insurance proceeds paid to him was a receipt of principal.

In an attempt to simplify the analysis, we note at the outset that appellants have neither pled nor argued their case under any theory of partnership law. Instead, they have chosen to proceed under the theory of implied trust. The trial court decided the case on the implied trust theory. Likewise, we shall analyze the case under the same theory. Interestingly, Richley's counterclaim was presented and decided under partnership law. As Richley has not assigned any error, we need not review the trial court's decision to deny recovery of the expenses associated with maintaining the property.

We also note that appellants failed to provide the trial court with a copy of the transcript when filing their objections to the referee's report, as required by Civ.R. 53(E)(6). Thus, in analyzing any alleged error regarding findings of fact, we are limited to determining whether the trial court abused its discretion in adopting the findings of the referee. *High v. High* (1993), 89 Ohio App.3d 424, 426–427, 624 N.E.2d 801, 802–803.

First, appellants claim that the trial court erred in finding that Richley held title to the property as a resulting trustee instead of as a constructive trustee. Appellants argue that, because Richley did not reveal to them that he had entered similar partnership agreements with each of them, he held title to the land as a constructive trustee for their benefit. In response, Richley agrees that he held title to the land as trustee for the benefit of the appellants, but claims that he was a resulting trustee rather than a constructive trustee.

The law recognizes two major types of trusts, express and implied. An express trust is "a fiduciary relationship with respect to property, arising as a result of a manifestation of an intention to create it and subjecting the person in

whom the title is vested to equitable duties to deal with it for the benefit of others." 5 Scott on Trusts (4th Ed.1967) 310, Section 462.1; see *Peterson v. Teodosio* (1973), 34 Ohio St.2d 161, 63 O.O.2d 262, 297 N.E.2d 113. It is clear that no express trust was created in the present case, and neither party argues that one existed.

Both parties agree that an implied trust has been created. There are two kinds of implied trusts, constructive and resulting. A constructive trust arises irrespective of the intention of the parties. *Peterson, supra.* The concept of a "constructive trust" has been explained as follows:

"A constructive trust is imposed where a person holding title to property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if he were permitted to retain it. The duty to convey the property may arise because it was acquired through fraud, duress, undue influence or mistake, or through a breach of fiduciary duty, or through the wrongful disposition of another's property. The basis of the constructive trust is the unjust enrichment that would result if the person having the property were permitted to retain it. Ordinarily a constructive trust arises without regard to the intention of the person who transferred the property." (Emphasis omitted.) *Bilovocki v. Marimberga* (1979), 62 Ohio App.2d 169, 171–72, 16 O.O.3d 369, 371, 405 N.E.2d 337, 340, quoting 5 Scott on Trusts 8–9, Section 404.2; *Glick v. Dolin* (1992), 80 Ohio App.3d 592, 609 N.E.2d 1338.

Thus, a constructive trust "is an equitable remedy imposed to prevent fraud or unjust enrichment." *Glick*, 80 Ohio App.3d at 596, 609 N.E.2d at 1341.

In contrast to a constructive trust, a resulting trust is based on the intention of the parties. The Ohio Supreme Court has defined "resulting trust" as follows:

"A resulting trust has been defined as 'one which the court of equity declares to exist where the legal estate in property is transferred or acquired by one under facts and circumstances which indicate that the beneficial interest is not intended to be enjoyed by the holder of the legal title.' *First Natl. Bank of Cincinnati v. Tenney* (1956), 165 Ohio St. 513, 515–516, 60 O.O. 481, 482, 138 N.E.2d 15, 17.

There are three general situations in which resulting trusts are imposed: (1) where an express trust fails in whole or in part, (2) where an express trust is performed without exhausting the trust estate, and (3) purchase-money trusts. *Tenney, supra; John Deere Indus. Equip. Co. v. Gentile* (1983), 9 Ohio App.3d 251, 9 OBR 425, 459 N.E.2d 611. Clearly, the first two situations are not present in this case, as there was no attempt to create an express trust.

■ The trial court found that a purchase-money resulting trust existed. A purchase-money trust arises where title to property is transferred to one person, but the purchase price is paid by another. *Glick, John Deere, supra.* Such a situation raises an inference that the title-holder is not intended to possess a beneficial interest in the property.

■ It is also well settled that a purchase-money trust may arise pro tanto where a person other than the title holder pays only a portion of the purchase price. *Glick, supra;* 5 Scott on Trusts, *supra,* Section 454. Pursuant to the Restatement of the Law 2d, Trusts (1959) 416–417, Section 454:

"Where a transfer of property is made to one person and a part of the purchase price is paid by another, a resulting trust arises in favor of the person by whom such payment is made in such proportion as the part paid by him bears to the total purchase price, unless he manifests an intention that no resulting trust should arise or that a resulting trust to that extent should not arise."

Therefore, "the equitable owner has an interest in such proportion as the amount he paid bears to the total purchase price." *Glick,* 80 Ohio App.3d at 597, 609 N.E.2d at 1342.

■ Upon examining the facts as found by the referee in this case, we find that the trial court did not err in finding that Richley held title to the property as a resulting trustee for the benefit of Gabel and Ravenscraft. The appellants each paid one-half of the purchase price of certain parcels of land with the understanding that Richley would hold title to the property in his name. While it is true that Richley failed to inform the appellants of each other's involvement in the investment, they were fully aware that Richley was purchasing land in his name to be held for their respective benefits in proportion to the price they had paid. Legal title to the property was not obtained through fraud, deceit, or duress.

■ Further, we think that appellants' argument that a constructive trust should be imposed misses the true issue because there is no difference between the result of imposing a resulting trust and the result of imposing a constructive trust in this case. See *Morris v. Invest. Life Ins. Co. of Am.* (1969), 18 Ohio App.2d 211, 233, 47 O.O.2d 349, 361–362, 248 N.E.2d 216, 231 ("Distinctions as to [the application of] resulting or constructive trusts are meaningless."); *Tasker v. Sweitzer* (May 1, 1985), Summit App. No. 11969, unreported, 1985 WL 10804 ("The distinction between resulting and constructive trusts becomes meaningless under threat of an unconscionable result, since each takes its place in our jurisprudence fundamentally because equity abhors an unjust enrichment."). Under the imposition of either type of implied trust, Richley had a duty to transfer title to the property to the appellants as beneficiaries of the trust at their request.

Moreover, Richley has, in fact, already transferred title to his *entire* record interest in the property to Gabel and Ravenscraft, although he was not legally required to relinquish the entire interest. Since he contributed a total of $13,475 in capital, Richley was legally entitled to retain title to a proportionate amount of the property because he was a resulting trustee of only the portion of land actually paid for by Gabel and Ravenscraft. See *Glick,* 80 Ohio App.3d at 597, 609 N.E.2d at 1341–1342.

The pivotal issue in this case is not whether Richley held title to the property as trustee for the appellants, but rather whether Richley was entitled to retain the insurance proceeds. In examining this issue, the trial court concluded that Richley had a separate insurable interest in the property through his capital contributions and payment of expenses and was thus entitled to retain the insurance proceeds. The trial court simply reasoned that, because Gabel and Ravenscraft did not contribute to the insurance premiums, the insurance proceeds were outside the scope of the trust.

In resolving this issue, we begin by noting that the insurance proceeds themselves were not the direct subject of either a constructive or resulting trust. There is no indication that the insurance policy was fraudulently or otherwise wrongfully obtained. Appellants admit that they were not involved in the day-to-day management of the property but, instead, were involved to realize a profit when the land was sold. As appellants will, in fact, realize such a profit since Richley had transferred his interest to them, there is no indication that Richley has received an unconscionable benefit at their expense.

No direct resulting trust exists, as the trial court found that Richley did not use any of the appellants' money to pay the insurance premiums. Although appellants argue that Richley did not pay for the insurance premiums with his personal funds, we decline to find error in the trial court's finding, as this is a purely factual determination and appellants failed to file a transcript of the hearing as stated above.

Appellants next argue that because Richley had no independent interest in the property apart from his position as trustee for their interests, the insurance proceeds represent a return of principal and are, thus, part of the trust corpus. In support of this argument, appellants claim that Richley had no insurable interest in the property and was therefore insuring the property solely for their benefit.

We agree with appellants' legal assertion that a resulting trustee who obtains insurance on *trust property in which he has no independent interest* is obligated to remit any insurance proceeds to the beneficiaries of the trust. See, generally, *Savell v. Savell,* (Miss.1974), 290 So.2d 621; *Colburn v. St. Alfred's*

*Temple of Pittsburgh* (1965), 416 Pa. 214, 205 A.2d 857. Because a resulting trust is imposed in situations where it is inferred that the parties did not intend for the resulting trustee to enjoy a beneficial interest in the property, it would be inequitable for the resulting trustee to benefit by receiving insurance proceeds on the property at the expense of the beneficiaries.

In the present case, however, the trial court found that Richley had not insured the property for the benefit of the resulting trust, but for his own personal benefit. The trial court held that because Richley had a separate insurable interest in the property and had personally paid the insurance premiums, the insurance proceeds were not a receipt of the trust principal and were outside the scope of the trust.

A person "has an insurable interest in property whenever he would profit by or gain some advantage by its continued existence and suffer some loss or disadvantage by its destruction." 3 Couch on Insurance 2d (Rev.Ed.1984) 36, Section 24:13; *Phillips v. Cincinnati Ins. Co.* (1979), 60 Ohio St.2d 180, 14 O.O.3d 413, 398 N.E.2d 564. Clearly, a property owner has an insurable interest in that property, and it is generally recognized that co-owners have separate insurable interests in property to the extent of their interests in the property. Couch, *supra,* at Section 24:96.

Appellants argue that Richley had no separate insurable interest in the property. Appellants claim that had Richley properly accounted for all income and expenses associated with the property during his record ownership, there would have been sufficient funds to repay himself for his capital contributions, and, therefore, that he had no separate interest. We do not find this argument persuasive. The trial court adopted the factual finding of the referee that Richley contributed $13,475 in capital plus expenses. Taking that factual finding as true, Richley plainly had an insurable interest in the property. As stated above, Richley was resulting trustee of only the portion of property for which appellants actually paid. As beneficiaries of the resulting trust, appellants had an insurable interest and could have obtained insurance to protect that interest.

Richley was under no duty to insure the trust property. Trustees of resulting trusts stand in a fiduciary relationship to the trust beneficiaries but do not have the same active management duties of trustees of express trusts. The trustee of a resulting trust is "ordinarily under a duty merely to convey the property to the beneficiary or in accordance with his directions." Restatement of the Law 2d, Trusts, *supra,* at Introductory Note, Chapter 12.

As Richley was co-owner of the property through his personal contribution of capital and expenses, did not use any of appellants' funds to obtain insurance, and

was under no obligation to do so, we find that the insurance proceeds were outside the scope of the trust. Appellants' assignment of error is overruled.

The judgment of the trial court is affirmed.

*Judgment affirmed.*

WOLFF and GRADY, JJ., concur.