In re Rebecca H. METZGER,
Debtor(s).

Valley Title and Escrow Agency,
Inc., Plaintiff(s),

v.

Rebecca H. Metzger, Defendant(s).

Bankruptcy No. 09–51077.
Adversary No. 09–2211.

United States Bankruptcy Court,
S.D. Ohio,
Eastern Division.

Dec. 28, 2010.

James H. Bownas, Zaino & Humphrey, LPA, Dublin, OH, Nicholas I. Andersen, Dublin, OH, for Plaintiff(s).

Ralph A. Kerns, Worthington, OH, for Defendant(s).

## MEMORANDUM OPINION AND ORDER REGARDING AMENDED COMPLAINT TO DETERMINE DISCHARGEABILITY (DOC. NO. 6)

CHARLES M. CALDWELL,
Bankruptcy Judge.

This Memorandum Opinion and Order constitutes the Court's findings of facts and conclusions of law regarding the Amended Complaint to Determine Dischargeability filed on behalf of Valley Title and Escrow Agency, Inc. ("Plaintiff") against the Debtor, Rebecca H. Metzger ("Defendant"). The conflict arises from a mortgage refinance closing conducted by the Plaintiff, that served as a fiduciary and closing agent on behalf of the Defendant and her lenders. It is now alleged that the Defendant wrongfully received and converted loan proceeds intended for Bank of America, as the holder of a new first mortgage.

Based upon the evidence, including assessments of the relative credibility of witnesses, the Court has determined that the Plaintiff has failed to sustain its burden by a preponderance of the evidence. Accordingly, the obligation is discharged. A brief history will illustrate the bases for this decision.

On December 21, 2006, the Plaintiff was scheduled to conduct a closing for a mortgage refinance of the Defendant's home, 3134 Bremen Street, Columbus, Ohio 43224. However, the principal of the Plaintiff, Thad T. Rieger ("Mr. Rieger") was not available, and a Mr. John Shockley ("Mr. Shockley"), closed the loan as a favor, after business hours. Mr. Shockley is an attorney and a title agent in the same building; but he is not an employee of the Plaintiff. According to his testimony, the Defendant and her husband were present along with their attorney. Mr. Shockley testified, however, that he did not prepare the closing documentation or draft any checks given to the Defendant. He also testified that he could not recall whether he reviewed the documentation prior to the closing, and he cannot recall any instructions he gave the Defendant regarding checks for the loan proceeds.

The refinance transaction actually involved two loans, a first mortgage from Bank of America in the amount of $69,700.00, and a home equity line of credit and second mortgage from National City Bank in the amount of $26,600.00. The loans were intended to pay a first mortgage held by ABN Amro Mortgage Group, Inc. and a second mortgage held by Chase. According to the Plaintiff, the new second mortgage was to serve as a down payment for the new first mortgage to improve the loan-to-value ratio. The Plaintiff asserts that the Defendant was only supposed to receive net proceeds in the amount of $8,223.81.

On December 27, 2006, and after the three-day rescission period; however, the Plaintiff also gave a check for $26,246.00 to Defendant's husband, Don J. Heil ("Mr. Heil"). Mr. Heil credibly testified that he twice questioned two individuals, who he observed to be a secretary and a manager employed by the Plaintiff. His goal was to ensure that the amount of the check at issue was not too high. Mr. Heil credibly testified that both employees assured him that the check amounts were correct. Indeed, Mr. Rieger confirmed that there were two employees in the office, a receptionist that has been employed approximately ten years and a title examiner employed for approximately fifteen years.

Mr. Heil further credibly testified that he and the Defendant understood that the amount they would receive from the transactions would depend upon the appraisal of the home and the amount of funds in escrow. The Plaintiff now asserts that the check for $26,246.00 was intended to be signed by the Defendant and returned to Valley Title, so the funds could be applied to the new first mortgage to be held by, Bank of America, as a down payment on that loan. The simultaneous closing of two loans to pay two preexisting loans appears to have played a role in the alleged error, and served as the catalyst for the instant litigation.

There is no dispute that the Plaintiff voluntarily relinquished the $26,246.00 check. The Plaintiff also admits that the check it issued was in error, and that they did not discover the mistake until approximately thirteen months later, in late January 2008. This belated discovery took place as part of a year-end audit of escrow accounts. Two months later, on March 24, 2008, a demand letter was issued, and on March 25, 2008, the Plaintiff deposited funds from its operating account to cover the thirteen-month-old escrow shortage.

■ The Plaintiff then sued the Defendant in state court. The bankruptcy filing, commenced on February 6, 2009, stayed the litigation. The Plaintiff filed the instant Complaint on May 11, 2009. It is alleged that the obligation is non-dischargeable pursuant to section 523(a)(2)(A) (fraud), 523(a)(4) (embezzlement and larceny) and 523(a)(6) (willful and malicious injury) of the United States Bankruptcy Code ("Code"). Preponderance of the evidence is the burden of proof on all counts.

■ To prevail on the basis of fraud under section 523(a)(2)(A) of the Code, the following factors must be established: "(1) the debtor obtained money through a false representation, that, at the time, the debtor knew was false or made with gross recklessness as to its truth; (2) the debtor intended to deceive the creditor; (3) the creditor justifiably relied on the false representation; and (4) the creditor's reliance was the proximate cause of loss." *Rembert v. AT & T Universal Card Services, Inc. (In re Rembert)*, 141 F.3d 277, 280–281 (6th Cir.1998), cert. denied 525 U.S. 978, 119 S.Ct. 438, 142 L.Ed.2d 357 (1998).

■ An embezzlement claim under Section 523(a)(4) requires proof that the property was entrusted to the debtor, and that the debtor fraudulently used the funds for some purpose other than agreed. *JP Morgan Chase Bank, NA v. Algire (In re Algire)*, 430 B.R. 817, 821–822 (Bankr. S.D.Ohio 2010). Proof of larceny, under this same provision, requires an unlawful acquisition of property. *Chapman v. Pomainville, (In re Pomainville)*, 254 B.R. 699, 705 (Bankr.S.D.Ohio 2000).

■ A claim based upon alleged willful and malicious injury, under section 523(a)(6) of the Code, requires proof that the debtor desired to cause the injury. *Kawaauhau v. Geiger*, 523 U.S. 57, 61, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998); *Markow-*

*itz v. Campbell (In re Markowitz)*, 190 F.3d 455, 463–464 (6th Cir. Mich.) (1999). Willful means a deliberate or intentional injury. *West Michigan Community Bank v. Wierenga (In re Wierenga)*, 431 B.R. 180, 185 (Bankr.W.D.Mich.2010); *Farm Credit Services of Mid–America, PCA v. Marklin (In re Marklin)*, 429 B.R. 880, 881–882 (Bankr.W.D.Ky.2010). The injury is malicious when the debtor has acted in conscious disregard of duties or without excuse or justification. *Gonzalez v. Moffitt (In re Moffitt)*, 252 B.R. 916, 923 (6th Cir.BAP2000).

█ The Plaintiff has failed to sustain its burden of proof under all three of the dischargeability sections. Addressing first the embezzlement and larceny claims (11 U.S.C. § 523(a)(4)), the funds were freely given to the Defendant from the Plaintiff's escrow account. She was simply closing a mortgage refinance. The check at issue was written solely to the Defendant, rather than jointly with Bank of America. The funds then belonged to the Defendant.

As Mr. Rieger testified, the drafting of the checks was the Plaintiff's responsibility. This task was in turn delegated to the office manager who utilized a software program to generate checks. Mr. Rieger, as the principal, could not testify regarding any written instructions given to employees, such as the office manager, specifically to make sure that checks destined for a new lender are signed and then returned to the Plaintiff for proper application. Instead, there were no strings attached, that would cause the Court to find that the funds were entrusted in any sense to the Defendant for an agreed upon purpose. In addition, there is no basis for this Court to find that there was an unlawful taking of property, since the check was freely given to the Defendant, and the Plaintiff waited approximately thirteen months to discover and seek to rectify the alleged error.

█ Turning to the fraud and willful and malicious injury claims (11 U.S.C. § 523(a)(2) and (6)), the Plaintiff has failed to establish that there was any false representation, or omission upon which it justifiably relied. The Defendant simply had her husband pick up a check. Even he questioned the amount. The fact that the funds were spent shortly thereafter is not persuasive proof of intent to defraud or to cause a willful and malicious injury. It was after all a refinance transaction, and both parties admit that the Defendant was to receive a portion of the proceeds as part of the closing to defray other obligations. There was no proof that the Plaintiff relied upon anything said or done by the Defendant. Further, given the fact that the Plaintiff was acting as the fiduciary and closing agent and failed to recognize its own error for approximately thirteen months, there is no proof that the Defendant's actions were the proximate cause of any loss. Instead, it was the Plaintiff's error in issuing the check and then waiting thirteen months to act, that caused the loss.

Accordingly, the obligation is DISCHARGED.

**IT IS SO ORDERED.**