**In re Philip G. MENNA.**

**CENTURY 21 BALFOUR REAL ESTATE, Plaintiff, Appellant,**

**v.**

**Philip G. MENNA, Defendant, Appellee.**

**No. 93–1767.**

United States Court of Appeals, First Circuit.

Heard Dec. 8, 1993.

Decided Feb. 10, 1994.

---

Daniel L. Cummings, with whom Norman, Hanson & DeTroy, Portland, ME, was on brief for appellant.

John E. Geary, Portland, ME, for appellee.

Before TORRUELLA, CYR and STAHL, Circuit Judges.

CYR, Circuit Judge.

Plaintiff-appellant Century 21 Balfour Real Estate ("Balfour") commenced an adversary proceeding to determine whether its claim against defendant-appellee Philip G. Menna is dischargeable in bankruptcy. The bankruptcy court ruled against Balfour, the district court upheld the ruling, and we now affirm.

## I

### BACKGROUND

Menna retained Balfour to sell his business. Following the sale, the buyers, Robert and Brenda Pawloski, brought a state court action against Menna and Balfour for fraud and negligent misrepresentation, respectively, and Balfour cross-claimed against Menna for equitable indemnification. The jury found Menna and Balfour jointly and severally liable and awarded the Pawloskis $128,500 in compensatory damages. The state court entered judgment for Balfour on its cross-claim for indemnification against Menna because Balfour's mere negligence made it less culpable than Menna, whose conduct had been found fraudulent. The Pawloskis thereafter recovered $110,000 from Balfour on their judgment.

After Menna filed a voluntary chapter 7 petition, Balfour commenced an adversary proceeding against Menna to have its $110,000 indemnification claim against Menna declared nondischargeable, pursuant to Bankruptcy Code §§ 523(a)(2)(A) (debt "for money ... to the extent obtained by ... actual fraud") and 523(a)(6) (debt "for willful and malicious injury by the debtor to another entity"), 11 U.S.C. §§ 523(a)(2)(A), (a)(6) (1993). On the cross-motions for summary judgment the bankruptcy court ruled that Balfour's indemnification claim is dischargea-

ble, *see Century 21 Balfour Real Estate v. Menna (In re Menna),* 152 B.R. 5, 6 (Bankr. D.Me.1993), and the district court summarily affirmed.

## II

### *DISCUSSION*

#### A. *Standard of Review*

We review the grant of summary judgment *de novo,* employing the same standards incumbent on the bankruptcy court, in order to determine whether " 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.' " *Gaskell v. The Harvard Coop. Soc'y,* 3 F.3d 495, 497 (1st Cir.1993) (quoting Fed.R.Civ.P. 56(c)); *see also* Fed. R.Bankr.P. 7056. Although all reasonable inferences are to be drawn in favor of the nonmoving party, "[a]s to any essential factual element of its claim on which the nonmovant would bear the burden of proof at trial, its failure to come forward with sufficient evidence to generate a trialworthy issue warrants summary judgment to the moving party." *Ralar Distribs., Inc. v. Rubbermaid, Inc. (In re Ralar Distribs., Inc.),* 4 F.3d 62, 67 (1st Cir.1993); *see also Milton v. Van Dorn Co.,* 961 F.2d 965, 969 (1st Cir.1992).

#### B. *Applicable Law*

Exceptions to discharge are narrowly construed in furtherance of the Bankruptcy Code's "fresh start" policy and the claimant must show that its claim comes squarely within an exception enumerated in Bankruptcy Code § 523(a). *See Commerce Bank & Trust Co. v. Burgess (In re Burgess),* 955 F.2d 134, 136–37 (1st Cir.1992); *see also Werner v. Hofman,* 5 F.3d 1170, 1172 (8th Cir.1993); *LSP Inv. Partnership v. Bennett (In re Bennett),* 970 F.2d 138, 148 (5th Cir. 1992); *Stackhouse v. Hudson (In re Hudson),* 859 F.2d 1418, 1425 (9th Cir.1988). Section 523(a)(2)(A) excepts from discharge "any debt ... for money, property, [or] services ... to the extent obtained by false pretenses, a false representation, or actual fraud." Bankruptcy Code § 523(a)(2)(A), 11 U.S.C. § 523(a)(2)(A).[1] The complaint alleges that Balfour's claim against Menna is "based on indemnification," and "thus *based upon* [Menna's] fraudulent conduct *toward the Pawloskis,*" as evidenced by the Pawloskis' fraud judgment against Menna. (Emphasis added.) Section 523(a)(6) further excepts from discharge "any debt ... for willful and malicious injury by the debtor to another entity or to the property of another entity." *Id.* § 523(a)(6), 11 U.S.C. § 523(a)(6). The complaint alleges that Balfour's indemnification claim is "*based upon* [Menna's] malicious conduct *toward the Pawloskis,*" as evidenced by the Pawloskis' $25,000 punitive damages verdict against Menna. (Emphasis added.) Balfour concedes, however, that it presented no competent evidence that Menna either acted with malice *toward,* or intended to defraud, *Balfour.*[2]

Balfour principally complains that the bankruptcy court failed to recognize that section 523(a) does not require a showing that the claimant was the *direct* or *immediate* target of the debtor's fraudulent intent or malicious conduct. Therefore, it argues, since Menna exposed *both* Balfour (Menna's equitable indemnitee) and the Pawloskis to the $128,500 loss, Balfour's claim for equitable indemnification is one "*for* money ... obtained by [the debtor's] actual fraud," or "*for* willful and malicious injury by the debtor to another entity." Were it otherwise, Balfour says, dishonest debtors like Menna who embroil less culpable third parties like

---

1. The claimant in a nondischargeability proceeding under § 523(a)(2)(A) must prove fraud by a preponderance of the evidence. *See Grogan v. Garner,* 498 U.S. 279, 287–90, 111 S.Ct. 654, 660–61, 112 L.Ed.2d 755 (1991).

2. We are not persuaded by Balfour's contention that it should have been given an opportunity to prove that Menna's fraudulent intent or malicious conduct was *directed toward Balfour.* The district court correctly noted that the complaint made no such allegation, nor did Balfour assert such an argument before the bankruptcy court. *See Mark Bell Furniture Warehouse, Inc. v. D.M. Reid Assocs., Ltd. (In re Mark Bell Furniture Warehouse, Inc.),* 992 F.2d 7, 9 (1st Cir.1993) (arguments not raised in bankruptcy court cannot be raised for first time on appeal).

Balfour in their fraudulent schemes could easily subvert the Code's central strategy of restricting the "fresh start" discharge to "*honest* but unfortunate" debtors. *Local Loan Co. v. Hunt,* 292 U.S. 234, 244, 54 S.Ct. 695, 699, 78 L.Ed. 1230 (1934) (emphasis added); *see also Brown v. Felsen,* 442 U.S. 127, 128, 99 S.Ct. 2205, 2207, 60 L.Ed.2d 767 (1979) (same); H.R.Rep. No. 595, 95th Cong., 1st Sess. 125, *reprinted in* 1978 U.S.C.C.A.N. 5787, 5963, 6086 (same).

▮ We conduct plenary review of the bankruptcy court's construction of the legislative language–"debt for"–employed in Bankruptcy Code § 523(a). *The Travelers Ins. Co. v. Cambridge Meridian Group, Inc. (In re Erin Food Servs., Inc.),* 980 F.2d 792, 799 (1st Cir.1992). First, we underscore that section 523(a) does not employ the terms adopted in Balfour's paraphrase—"debt based upon"—nor does the statutory language remotely suggest that nondischargeability attaches to any claim other than one which arises as a direct result of the debtor's misrepresentation or malice.[3] Moreover, Balfour cites no case in which it has been argued, let alone decided, that the nonfraud-based indemnification claim of an entity whose negligence has combined with the fraud of its joint tortfeasor to cause injury to a third party is nondischargeable in the bankruptcy of the fraudulent tortfeasor.[4] Given the strict construction afforded all dischargeability exceptions under section 523(a), *see In re Burgess,* 955 F.2d at 137, we have been provided with neither authority nor rea-

son to extend the statutory language as urged by Balfour.

▮ Second, Balfour wrongly presumes that exceptions to discharge serve only to penalize the debtor. Rather, as a function of its essentially equitable nature, a nondischargeability determination under section 523(a) is designed concomitantly to protect the *inculpable* creditor, *cf.* H.R.Rep. No. 595, *supra,* at 130, *reprinted in* 1978 U.S.C.C.A.N. at 6091 ("The premise of [§ 523(a)(2)(B)] is that a creditor that extended credit based on misinformation or fraudulent information transmitted by the debtor *should be protected.*") (emphasis added). Thus, the legislative purposes served by sections 523(a)(2) and 523(a)(6) are at once retributive *and protective.*

▮ Section 523(a)(2) requires showings by the claimant that (1) the debtor knowingly or recklessly made a material misrepresentation with intent to deceive the creditor; and (2) the creditor "reasonably" *relied* on the misrepresentation to its detriment. *In re Burgess,* 955 F.2d at 140; *see also Longo v. McLaren (In re McLaren),* 3 F.3d 958, 961 (6th Cir.1993) (reliance must be the "proximate cause" of claimant's loss). If section 523(a)(2) had been intended simply to deter *all* bad faith conduct by the debtor *irrespective of its effect upon the particular creditor,* as Balfour's argument impliedly assumes, there would have been no need to condition the creditor's right to a nondischargeability ruling on a showing of reasonable reliance.[5]

---

**3.** The parties devote considerable attention to whether both the Balfour and the Pawloski "claims" derive from the *same* "debt," or from two *distinct* "debts." However, neither the Bankruptcy Code's austere definitions, *see* Bankruptcy Code § 101(11), 11 U.S.C. § 101(11) ("debt" is "liability on a claim"), § 101(4)(A), 11 U.S.C. § 101(4)(A) ("claim" is "a right to payment, whether or not such right is reduced to judgment"), nor the broad pronouncements on the common law principles of equitable indemnification, *see Northeast Bank of Lewiston & Auburn v. Murphy,* 512 A.2d 344 (Me.1986), afford helpful insight into the substantive concerns presently at issue. We will not reverse a bankruptcy court's grant of discharge relief except for reasons both "real and substantial." *See In re Burgess,* 955 F.2d at 137.

**4.** Balfour asserts neither subrogation rights nor assignment of the Pawloskis' nondischargeable

claim. *See, e.g.,* Bankruptcy Code § 509(a), 11 U.S.C. § 509(a); *McCain Foods, Inc. v. Gerard,* 489 A.2d 503, 504 (Me.1985) (state law doctrine of equitable subrogation). Compare, *e.g., In re Fields,* 926 F.2d 501, 504 (5th Cir.) (creditor who pays debtor's taxes is subrogated to IRS's nondischargeable claim under § 523(a)(1)), *cert. denied,* —— U.S. ——, 112 S.Ct. 371, 116 L.Ed.2d 323 (1991), *with National Collection Agency, Inc. v. Trahan,* 624 F.2d 906, 907 (9th Cir.1980) (reaching opposite result under *Bankruptcy Act*).

**5.** The legislative history of the Bankruptcy Reform Act of 1978 confirms that § 523(a)(2)(A) deliberately abandoned a *purely* retributive purpose. Bankruptcy Act § 17(a)(2), *as amended,* 11 U.S.C. § 35(a)(2) (1964), the predecessor to § 523(a)(2), contained no explicit requirement that the creditor's reliance be "reasonable." *See BancBoston Mortgage Corp. v. Ledford (In re Led-*

Even assuming *arguendo* that an equitable indemnitee's vicarious injury might satisfy the first constituent element of the "fraud" test under section 523(a)(2), thereby *generally* establishing bad faith or misconduct on the part of the debtor, Balfour nonetheless must make the "reasonable reliance" showing required under section § 523(a)(2)—that *it* reasonably and detrimentally relied on Menna's misrepresentations.[6]

### C. *Summary Judgment*

■ Reasonable reliance is an issue of fact, *see Coston v. Bank of Malvern (In re Coston* ), 991 F.2d 257, 260–61 (5th Cir.1993) (§ 523(a)(2)), on which Balfour would have borne the burden of proof at trial. Yet it presented no evidence whatever from which the bankruptcy court could have determined whether Balfour actually or reasonably relied on Menna's misrepresentations when it communicated the unspecified misinformation about the pending sale to the Pawloskis. Indeed, the record is even devoid of evidence of the circumstances surrounding the November 1987 sale transaction, the nature, duration or history of the Menna–Balfour business relationship, or whether Balfour might have detected or thwarted Menna's misrepresentations by "minimal investigation." *See BancBoston Mortgage Corp. v. Ledford (In re Ledford* ), 970 F.2d 1556, 1560 (6th Cir.1992) (summarizing various indicia of "reasonable" reliance under § 523(a)(2)), *cert. denied,* —— U.S. ——, 113 S.Ct. 1272, 122 L.Ed.2d 667 (1993).

■ Moreover, Balfour may well have been collaterally estopped from litigating the "reasonableness" of any reliance on Menna's misrepresentations. *See* 1B James W. Moore, Jo D. Lucas, Thomas S. Currier, *Moore's Federal Practice* ¶ 0.419 [3.–4], at 649–50 (2d ed. 1992); *Grogan v. Garner,* 498 U.S. 279, 287, 111 S.Ct. 654, 660, 112 L.Ed.2d 755 (1991) (collateral estoppel applies in § 523(a) proceeding where prior judgment required same or greater burden of proof). Under Maine law, the Pawloskis' negligent misrepresentation claim against Balfour required proof that, *inter alia:* (1) Balfour supplied information to the Pawloskis as "guidance" in their business transaction, (2) the Pawloskis *justifiably relied* on the information; and (3) Balfour failed to exercise *reasonable care or competence* in obtaining or communicating the information." *Jordan–Milton Mach., Inc. v. F/V Teresa Marie, II,* 978 F.2d 32, 36 (1st Cir.1992) (citing *Chapman v. Rideout,* 568 A.2d 829 (Me.1990) (adopting Restatement (Second) of Torts § 552(1))).

Balfour argues, nonetheless, that collateral estoppel does not bar its claim because the requisite "reasonable care" showing for negligent misrepresentation under Maine law, and the "reasonable reliance" showing required under section 523(a)(2)(A), are not necessarily coextensive; that is, the former concerns Balfour's duty to the Pawloskis, not its duty to Menna. Even so, Balfour gains nothing. If the two legal standards do diverge, as Balfour argues, the two state court judgments simply are not probative of Balf-

---

ford ), 970 F.2d 1556, 1559 (6th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1272, 122 L.Ed.2d 667 (1993). Moreover, under former °Bankruptcy Act § 14(c)(3), *as amended,* 11 U.S.C. § 32(c)(3), obtaining money or credit on a materially false financial statement constituted a ground for denial of the debtor's *general* discharge, not merely for establishing the nondischargeability of the particular debt or debts incurred as a consequence of the fraudulent conduct. *See* Philip Shuchman, *The Fraud Exception in Consumer Bankruptcy,* 23 Stan.L.Rev. 735, 739 (1971).

**6.** Just as § 523(a)(2) requires that the debtor's fraud be assessed in light of its effect upon the creditor, section 523(a)(6), which simultaneously uses the phrase "debt for" in reference to an

analogous form of debtor "misconduct" (*i.e.,* malice), must require that an indemnitee make some minimal evidentiary showing that its injury was *not* proximately caused by its own *intervening conduct. See In re La Flamme,* 14 B.R. 21, 25 (Bankr. 1st Cir.1981) (the meaning of a particular Code section must be discerned from an examination of the *overall* structure and policy of the statutory provision).

Since Balfour produced no evidence which would permit an assessment of the contribution its own intervening conduct made to its injury, *see infra* Section II.C, we need not define with precision the level of creditor "inculpability" required under section 523(a)(6), nor distinguish that standard from the "reasonable reliance" showing required under section 523(a)(2).

our's "reasonable reliance," [7] and Balfour had the burden of producing some competent evidence from which the bankruptcy court could find reasonable reliance.  On the other hand, if the standards do *not* diverge, collateral estoppel barred Balfour's present contention as a matter of law.  *See Ralar*, 4 F.3d at 67.

*Affirmed.*

---

7.  Balfour's judgment for indemnification against Menna did not *necessarily* depend on whether Balfour's reliance was "reasonable" but on whether Balfour was *less* culpable than Menna. *See Northeast Bank*, 512 A.2d at 350–51.