United States Court of Appeals
For the First Circuit


No. 96-1600

IN RE: JURAJ J. BAJGAR,

Debtor,



CAROL B. MARTIN, ADMINISTRATOR OF ESTATE OF FRANCIS A. MARTIN,
Plaintiff/Creditor, Appellant,

v.

JURAJ J. BAJGAR,
Defendant/Debtor, Appellee.



APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Morris E. Lasker, U.S. District Judge] 



Before

Torruella, Chief Judge, 
Bownes, Senior Circuit Judge, 
and Stahl, Circuit Judge. 



Arthur J. Carakatsane for appellant. 
Richard S. Hackel for appellee. 



January 17, 1997


STAHL, Circuit Judge. Creditor-Appellant Carol B. STAHL, Circuit Judge. 

Martin appeals the district court's affirmance of the

bankruptcy court's decision to grant Debtor-Appellee Juraj J.

Bajgar a discharge pursuant to 11 U.S.C. 727(a)(2)(A) with

respect to property that Bajgar fraudulently transferred

within one year before the filing of his voluntary petition

for relief under Chapter 7 of the Bankruptcy Code. We

reverse. 

Background Background 

Bajgar and his wife jointly owned a vacant parcel

of land in Port St. Lucie, Florida ("the Florida property"). 

On November 10, 1993, Bajgar conveyed his interest in the

land to his wife, purportedly as a belated engagement gift,

delayed twenty-three years. In return, Bajgar received "love

and affection." The conveyance was recorded on December 2,

1993. At the time of the conveyance, Bajgar faced a

collection action and several foreclosures. He conceded at

trial that the transfer was fraudulent within the meaning of

the Bankruptcy Code, admitting that the transfer was

completed with actual intent to hinder, delay, or defraud his

creditors.

On May 16, 1994, less than one year after the

conveyance of the Florida property, Bajgar filed a petition

for relief under Chapter 7 of the Bankruptcy Code. In his

petition, Bajgar disclosed the fraudulent transfer by

-3- 3

attaching a copy of the deed to the statement of affairs

filed pursuant to 11 U.S.C. 521(1). At a June 20, 1994,

mandatory creditors meeting, Bajgar and his wife volunteered

to reconvey the Florida property. 

On August 19, 1994, Martin, one of Bajgar's

creditors, filed a Complaint to Object to Discharge, which

she amended on September 21, 1994. Martin's amended

complaint alleged a violation of 11 U.S.C. 727(a)(2)(A),

which precludes discharge for a debtor who transfers property

within one year of the filing of a bankruptcy petition if he

acts with the intent to hinder, delay, or defraud a creditor. 

On September 30, 1994, at Bajgar's request and on the advice

of counsel, Bajgar's wife reconveyed the Florida property to

herself and Bajgar jointly by quitclaim deed. Bajgar's wife

completed the retransfer more than four months after Bajgar

filed his voluntary bankruptcy petition, more than three

months after the meeting with creditors, and more than one

month after Martin first objected to discharge.

The bankruptcy court (Hillman, J.) held that the

conveyance of the Florida property did not constitute grounds

to deny Bajgar's discharge under Section 727(a)(2)(A). 

Martin appealed this decision to the United States District

Court for the District of Massachusetts. The district court

(Lasker, J.) affirmed, determining that the re-transfer of

the Florida property to Bajgar cured Bajgar's admittedly

-4- 4

fraudulent initial transfer. This appeal ensued.

Standard of Review Standard of Review 

"In an appeal from the district court's review of a

bankruptcy court order, we independently review the

bankruptcy court's decision, applying the 'clearly erroneous'

standard to findings of fact and de novo review to 

conclusions of law." Grella v. Salem Five Cent Sav. Bank, 42 

F.3d 26, 30 (1st Cir. 1994); see also In re G.S.F. Corp., 938 

F.2d 1467, 1474 (1st Cir. 1991). The district court's

determination that the re-transfer justified discharging

Bajgar pursuant to Section 727(a)(2)(A) constitutes a

conclusion of law that we subject to plenary review. See 

Century 21 Balfour Real Estate v. Menna (In re Menna), 16 

F.3d 7, 10 (1st Cir. 1994); In re Erin Food Servs., Inc., 980 

F.2d 792, 799 (1st Cir. 1992).

Discussion Discussion 

This case presents this Circuit with an issue of

first impression: whether an admittedly fraudulent transfer

of a debtor's property within one year before the filing of a

voluntary petition for relief under Chapter 7 of the

Bankruptcy Code is cured for purposes of dischargeability

pursuant to Section 727(a)(2)(A) by its re-transfer to the

debtor after the debtor files his petition. We hold that re-

transfer subsequent to filing a voluntary bankruptcy petition

-5- 5

does not cure the fraudulent transfer, and, thus, does not

avail the debtor discharge under Section 727.

Title 11, Section 727(a)(2)(A) states in pertinent

part:

(a) The court shall grant the debtor a discharge, 
unless--

(2) The debtor, with intent to hinder,
delay, or defraud a creditor . . . has
transferred . . . 

(A) property of the debtor within
one year before the date of the
filing of the petition.

11 U.S.C. 727(a)(2)(A). Bajgar urges us to interpret the

term "transferred" to mean "transferred and remained

transferred" in the context of a debtor who reconveys

property subsequent to filing a voluntary bankruptcy

petition.

As we have stated previously, "the task of

interpretation begins with the text of the statute itself,

and statutory language must be accorded its ordinary

meaning." Telematics Int'l, Inc. v. NEMLC Leasing Corp., 967 

F.2d 703, 706 (1st Cir. 1992). "Where, as here, the

statute's language is plain, 'the sole function of the courts

is to enforce it according to its terms.'" United States v. 

Ron Pair Enters., Inc., 489 U.S. 235, 241 (1989) (quoting 

Caminetti v. United States, 242 U.S. 470, 485 (1917)). "The 

plain meaning of legislation should be conclusive, except in

the 'rare cases [in which] the literal application of a

-6- 6

statute will produce a result demonstrably at odds with the

intentions of the drafters.'" Ron Pair, 489 U.S. at 242 

(quoting Griffin v. Oceanic Contractors, Inc., 458 U.S. 564, 

571 (1982)).

The statutory language of Section 727(a)(2)(A) is

sufficiently plain. The statute specifically authorizes

denial of discharge if the debtor "transferred" property

within one year prior to the date of filing the bankruptcy

petition; it does not qualify this provision with a clause to

the effect that transferred property must remain transferred. 

See 11 U.S.C. 727(a)(2)(A). 

The Bankruptcy Code, moreover, defines the term

"transfer" broadly as "every mode, direct or indirect,

absolute or conditional, voluntary or involuntary, of

disposing of or parting with property or with an interest in

property." 11 U.S.C. 101(54). Although the legislative

history offers no guidance in interpreting "transfer" in the

context of Section 727(a)(2)(A), the legislative history of

Section 101(54), which defines "transfer," explains that

"[t]he definition of transfer is as broad as possible." S.

Rep. No. 989, 95th Cong. 27 (1978), reprinted in 1978 

U.S.C.C.A.N. 5787, 5813; H.R. Rep. No. 595, 95th Cong. 314

(1977). Limiting the definition of "transferred" to

"transferred and remained transferred," in fact, would

contradict the drafters' intent.

-7- 7

In support of his position, Bajgar recites Justice

Douglas' admonition that courts "do not read . . . statutory

words with the ease of a computer. There is an overriding

consideration that equitable principles govern the exercise

of bankruptcy jurisdiction." Bank of Marin v. England, 385 

U.S. 99, 103 (1966). This recitation, however, is misplaced

in this case. Bank of Marin addressed the issue of whether 

or not "the payment by the drawee of a drawer bankrupt's

checks after the date of th[e] filing [in bankruptcy] is a

`transfer' within the meaning of [repealed 11 U.S.C. 

110(d)(5)]." Id. at 102. The Court determined "it would be 

inequitable to hold liable a drawee who pays checks of the

bankrupt duly drawn but presented after bankruptcy, where no

actual revocation of its authority has been made and it has

not notice or knowledge of the bankruptcy." Id. at 103.  

Although Congress "has legislated the exception [that the

Marin Court articulated with respect to the need for notice] 

in 542(c)," Poonja v. Charles Schwab & Co. (In re Dominion 

Corp.), 199 B.R. 410, 413 (9th Cir. 1996), the legislative 

history makes plain that Congress, in revising the Bankruptcy

Code, did not intend to limit the definition of the term

"transfer." See S. Rep. No. 989, at 27; H.R. Rep. No 595, at 

314; see also Dominion Corp., 199 B.R. at 413 (explaining 

that changes made to the Code following Marin pertained to 

the definition of "transferee" not "transfer"). In fact,

-8- 8

"[t]he word 'transfer' has always had a most comprehensive

meaning under the bankruptcy laws and has been construed to

include every method of disposing of or parting with property

or its possession." 4 Collier on Bankruptcy 727.02[5] 

(15th ed. 1996). And, "[w]hatever force the assertion in

Bank of Marin v. England, that 'equitable principles govern 

the exercise of bankruptcy jurisdiction' may have had under

the 1898 Act, this approach has no place under the Code to

the extent the statute addresses the question." Levit v. 

Ingersoll Rand Fin. Corp., 874 F.2d 1186, 1189 (7th Cir. 

1989); see also In re Taubman, 160 B.R. 964, 980 (S.D. Ohio 

1993) ("It must [] be recognized that the exercise of []

equitable principles . . . 'cannot contravene specific

provisions of the Bankruptcy Code.'") (quoting Terex Corp. v. 

Metropolitan Life Ins. Co., 984 F.2d 170, 173 (6th Cir. 1993)).1 

 

1. The district court reasoned that "`the statutory right to
a discharge should ordinarily be construed liberally in favor
of the debtor.'" Martin v. Bajgar (In re Bajgar), C.A. No. 
95-12562-MEL, slip op. at 2-3 (quoting In re Tully, 818 F.2d 
106, 110 (1st Cir. 1987)). Although Tully did posit that 
"`[t]he reasons for denying a discharge to a bankrupt must be
real and substantial, not merely technical and conjectural,'"
it also directed that, "[o]n the other hand, the very purpose
of certain sections of the law, like 11 U.S.C. 727(a)[], is
to make certain that those who seek the shelter of the
bankruptcy code do not play fast and loose with their assets
or with the reality of their affairs." Tully, 818 F.2d at 
110 (quoting Dilworth v. Booth, 69 F.2d 621, 624 (5th Cir. 
1934)). In a more recent case, moreover, we explained that
"[e]xceptions to discharge are narrowly construed in
furtherance of the Bankruptcy Code's `fresh start' policy and
the claimant must show that its claim comes squarely within 
an exception enumerated in Bankruptcy Code [727(a)(2)]." 
Menna, 16 F.3d at 9 (emphasis added). In this case, Martin's 

-9- 9

Without delving into the murky realm of legislative

purpose and equitable principles, the Eleventh Circuit, one

of the two other courts of appeals to address this issue,

reached the same conclusion we reach today. See Davis v. 

Davis (In re Davis), 911 F.2d 560 (11th Cir. 1990) (per 

curiam). In Davis, the Eleventh Circuit considered the case 

of a debtor ("Davis") who transferred a one-half interest in

his home to his wife. See id. at 561. Upon the advice of a 

bankruptcy lawyer, Davis re-transferred the property. The

day following recordation of the deed formalizing this

retransfer, and less than one year after the initial

transfer, Davis filed for bankruptcy protection under Chapter

7. Despite the fact that Davis disclosed the existence of

the fraudulent transfers, a creditor filed an adversary

proceeding to deny discharge under Section 727(a)(2)(A). 

Like Bajgar, Davis argued that "the word

'transferred' should be read to mean 'transferred and

remained transferred' at the time a debtor files his

bankruptcy petition." Id. at 562. Refusing to discharge 

Davis, the Eleventh Circuit reasoned:

Normally, a court should interpret a
statute in a manner consistent with the

 

claim that Bajgar should be denied discharge because Bajgar
fraudulently transferred property within one year before the
filing of the bankruptcy petition falls squarely within the
exception that Section 727(a)(2)(A) enumerates. See 11 
U.S.C. 727(a)(2)(A). The Tully court's instruction, 
therefore, does not control this case.

-10- 10

plain meaning of the language used in the
statute. The statutory language of
section 727(a)(2)(A) is plain and
unambiguous. Congress certainly was
capable of drafting a statute which would
deny a discharge only when assets were
fraudulently transferred and remained
transferred at the time of filing of
bankruptcy proceedings, but it did not. 
We are a court and not a legislative
body; therefore, we are not free to
create by interpretation an exception in
a statute which is plain on its face.

Id. (citations omitted). According to the Eleventh Circuit, 

therefore, if a debtor fraudulently transfers property within

one year before the filing of a bankruptcy petition, he will

not receive a discharge. See Najjar v. Kablaoui (In re 

Kablaoui), 196 B.R. 705, 709 (S.D.N.Y. 1996) ("[T]he Eleventh 

Circuit wholly rejects the debtor's subsequent reconveyance

of the fraudulently transferred property as a defense to a

section 727(a)(2)(A) action.").

While the plain language of Section 727(a)(2)(A)

and the applicable legislative history point to the

conclusion that, upon proper objection, any debtor who

fraudulently transfers property within one year before the

filing of a bankruptcy petition is not entitled to receive a

discharge pursuant to Section 727, irrespective of the timing

of a reconveyance, this case presents us with a debtor who

reconveyed property several months subsequent to filing a

voluntary bankruptcy petition. We need not decide now either

the effect of a reconveyance made prior to the filing of a

-11- 11

voluntary bankruptcy petition or the question of a re-

transfer effected immediately following the filing of an

involuntary petition.

Despite Section 727(a)(2)(A)'s plain language and

the Davis court's interpretation, Bajgar seeks solace in a 

Ninth Circuit case, First Beverly Bank v. Adeeb (In re 

Adeeb), 787 F.2d 1339, 1344 (9th Cir. 1986), which 

interpreted the term "transferred" to mean "transferred and

remained transferred" in the context of Section 727(a)(2)(A). 

Both the bankruptcy court, see Bajgar, 186 B.R. at 8, and the 

district court, see Martin v. Bajgar (In re Bajgar), C.A. No. 

95-12562-MEL, slip op. at 2 (D. Mass. March 19, 1996), found

Adeeb persuasive in this case. We do not. 

In Adeeb, the court considered whether or not to 

discharge an individual ("Adeeb") who transferred property

"with intent to hinder, delay, or defraud a creditor" within

one year of the filing of a petition. See 787 F.2d at 1342, 

1344. Faced with demands from his creditors, Adeeb consulted

with an attorney who had little bankruptcy experience. 

Acting upon his attorney's advice, Adeeb transferred several

properties to third parties. Adeeb then retained an

experienced bankruptcy attorney, who advised him to re-

transfer the properties and to disclose the initial transfers

to his creditors. Adeeb followed this advice and immediately

began to reverse the transfers while notifying his creditors

-12- 12

of his actions. Before Adeeb could complete the re-transfers

and within one year of the initial fraudulent transfers,

several of his creditors filed an involuntary bankruptcy

petition against him. Determining not to contest this

petition, several days later Adeeb filed a voluntary

petition, "seeking a discharge of his indebtedness." Id. at 

1342.

The Adeeb court determined that "reading 

`transferred' . . . to mean 'transferred and remained

transferred' is most consistent with the legislative purpose

of [Section 727(a)(2)(A)]." Id. at 1344. The Adeeb court 

reasoned:

First, this reading encourages honest
debtors to recover property they have
transferred during the year preceding
bankruptcy. Encouraging debtors to
recover improperly transferred property
facilitates the equitable distribution of
assets among creditors by ensuring that
the trustee has possession of all of the
debtor's assets. Second, this reading
permits the honest debtor to undo his 
mistakes and receive his discharge.

Id. at 1345. Treating Adeeb as the subject of an involuntary 

petition because "[t]he involuntary petition in this case

began the bankruptcy process," id. at 1346 n.4, the court 

discharged Adeeb. The court held that "a debtor who has

disclosed his previous transfers to his creditors and is

making a good faith effort to recover the property

transferred at the time an involuntary bankruptcy petition is 

-13- 13

filed is entitled to a discharge of his debts if he is

otherwise qualified." Id. at 1346 (emphasis added). 

The Adeeb court, however, enunciated a different 

rule with respect to a debtor who files a voluntary 

bankruptcy petition: "[A] debtor who transfers property

within one year of bankruptcy with the intent penalized by

section 727(a)(2)(A) may not be denied discharge of his debts

if he reveals the transfers to his creditors, recovers 

substantially all of the property before he files his 

bankruptcy petition, and is otherwise qualified for a 

discharge." Id. at 1345 (emphasis added). As the Adeeb 

court explained, this rule demanding recovery prior to the

filing of a petition "assumes the filing of a voluntary

petition by the debtor. In that situation, the debtor

controls the time of filing the petition. He is therefore

able to time the filing to allow recovery of substantially

all of his property." Id. at 1346. Adeeb thus makes clear 

that the test applicable to a debtor subject to an

involuntary bankruptcy petition differs substantially from

the test the court would apply to a debtor filing a voluntary

bankruptcy petition.

Even were we to adopt Adeeb, its application to the 

instant case would result in denial of discharge. Bajgar did

not recover any of the transferred property until well after

he filed his voluntary bankruptcy petition. Although the

-14- 14

bankruptcy court noted the fact that Bajgar did not complete

reconveyance of the property "until several months after the

filing of the petition," Bajgar, 186 B.R. at 9, it determined 

that because Bajgar revealed the transfer at the time of his

filing, "those facts satisfy the Adeeb test that the recovery 

be 'prior to the time the bankruptcy petition was filed or

within a reasonable time after it was filed.'" Id. (quoting 

Adeeb, 787 F.2d at 1346). Contrary to the bankruptcy court's 

assertion, disclosure constitutes only one component of the

activity necessary to secure discharge under Adeeb. See 

Adeeb, 787 F.2d at 1345-46. Furthermore, the language that 

the bankruptcy court relies on from Adeeb applies to an 

involuntary petition, rather than a voluntary petition: "We

emphasize that the debtor [subject] . . . to the filing of

the involuntary petition . . . must actually recover the

property within a reasonable time after the filing of the 

involuntary petition." Adeeb, 787 F.2d at 1346 (emphasis 

added). In the case of a voluntary bankruptcy petition, such

as Bajgar filed, however, "[t]he Ninth Circuit requires

actual reconveyance of the fraudulently transferred property 

before the bankruptcy filing." Kablaoui, 196 B.R. at 709 

(explaining Adeeb) (emphasis added); see also Adeeb, 787 F.2d 

at 1345-46; March v. Sanders (In re Sanders), 128 B.R. 963, 

971 (W.D. La. 1991) ("Court of Appeals decisions . . . have

taken the position that mere disclosure of actions prohibited

-15- 15

by Sec. 727(a)(2)(A) will not prevent denial of discharge. 

What may allow discharge is disclosure accompanied by

voluntary prepetition reversal of the prohibited activities . 

. . .") (emphasis added). As the Kablaoui court concluded, 

"[h]ere the Debtor did not attempt to recover any of the

transferred property before filing for bankruptcy. Thus,

these transfers were not 'undone' under the Ninth Circuit's

definition of 'transfer.'" Kablaoui, 196 B.R. at 709. 

The bankruptcy court, again relying on Adeeb, 

endeavored to buttress its construction of Section

727(a)(2)(A) by insisting that construing "transferred" to

mean "transferred and remained transferred" furthers the

general purpose of the Bankruptcy Code. See Bajgar, 186 B.R. 

at 7-8. We recognize that reading the term "transferred" to

mean "transferred and remained transferred," could be

construed, in certain instances, to advance the "purpose of

the Bankruptcy Act to [distribute] the assets of the bankrupt

. . . among creditors and then to relieve the honest debtor

from the weight of oppressive indebtedness and permit him to

start afresh free from the obligations and responsibilities

consequent upon business misfortunes." Williams v. United 

States Fidelity & Guarantee Co., 236 U.S. 549, 554-55 (1915); 

Adeeb, 787 F.2d at 1345. This purpose affords the "honest 

but unfortunate debtor who surrenders for distribution the

property which he owns at the time of bankruptcy, a new 

-16- 16

opportunity in life and a clear field for future effort,

unhampered by the pressure and discouragement of preexisting

debt." Local Loan Co. v. Hunt, 292 U.S. 234, 244 (1934). 

In this case, however, Bajgar did not reveal his

initial fraudulent transfer until he filed his bankruptcy

petition. In addition, Bajgar consulted with an experienced

bankruptcy attorney at the time he executed the initial

fraudulent transfer. It was not until he faced the prospect

of being denied discharge pursuant to Section 727(a)(2)(A)

that Bajgar actually reconveyed the property. 

We are not presented with an "honest but

unfortunate debtor" that the Bankruptcy Code envisions as the

deserving recipient of a fresh start. Cf. Huckfeldt v. 

Huckfeldt (In re Huckfeldt), 39 F.3d 829, 832-33 (8th Cir. 

1994) (describing individual who did not constitute "honest

but unfortunate debtor"); Barclays/American Business Credit, 

Inc. v. Adams (In re Adams), 31 F.3d 389, 393-94 (6th Cir. 

1994) (refusing to discharge a debtor pursuant to Section

727(a)(2)(A)), cert. denied, 115 S. Ct. 903 (1995).2  

 

2. Adeeb, by contrast, did present such a picture. The
Adeeb court explained:  

We are . . . persuaded by practical
considerations that a discharge should
not be denied in the present situation.
It is not uncommon for an uncounseled or
poorly counseled debtor faced with
mounting debts and pressure from his
creditors to attempt to protect his
property by transferring it to others.

-17- 17

Contrary to the bankruptcy court's determination, therefore,

denying Bajgar discharge actually comports with the "purpose"

of the Bankruptcy Act. See Grogan v. Garner, 498 U.S 279, 

286-87 (1991) ("[I]n the same breath that we have invoked

th[e] 'fresh start' policy, we have been careful to explain

that the [Bankruptcy] Act limits the opportunity for a

completely unencumbered new beginning to the 'honest but

unfortunate debtor.'"); Citibank, N.A. v. Eashai (In re 

Eashai), 87 F.3d 1082, 1088 (9th Cir. 1996) ("This exception 

to discharge furthers the policy that an honest but

unfortunate debtor obtains a fresh start while a dishonest

debtor does not benefit from his wrongdoing."); Mayer v. 

Spanel Int'l Ltd., 51 F.3d 670, 674 (7th Cir.) ("Congress 

concluded that preventing fraud is more important than

letting defrauders start over with a clean slate, and we must

respect that judgment."), cert. denied, 116 S. Ct. 563 (1995).3 

 

Upon later reflection or upon obtaining
advice from experienced bankruptcy
counsel, the debtor may realize his
original transfer of property was a
mistake.

Adeeb, 787 F.2d at 1345. At oral argument in the instant 
case, however, Bajgar's attorney informed us that Bajgar was
well-counseled by an experienced bankruptcy lawyer throughout
the period in question, including the time he executed the
initial fraudulent transfer.

3. As for the Bankruptcy Code's objective of guaranteeing
the equitable distribution of a petitioner's estate among his
creditors, it is likely that our decision, by denying
discharge, will facilitate this outcome by deterring
petitioners from fraudulently transferring property within

-18- 18

Conclusion Conclusion 

Martin's claim "comes squarely within" Section

727(a)(2)(A)'s exception for property fraudulently

transferred within one year of the filing of a bankruptcy

petition. See Menna, 16 F.3d at 9. It is for Congress to 

determine whether or not this exception should be recast. We

REVERSE and REMAND to the district court with instructions to

remand to the bankruptcy court for proceedings consistent

with this opinion.

 

one year of filing a voluntary bankruptcy petition in the
first place. 

-19- 19