**In re Andrew J. MAGISANO, Debtor.**

**PaineWebber Incorporated, Plaintiff,**

**v.**

**Andrew J. Magisano, Defendant.**

**Bankruptcy No. 97–50846.**
**Adversary No. 97–0130.**

United States Bankruptcy Court,
S.D. Ohio,
Eastern Division.

Oct. 23, 1998.

---

Ann Intili, Calfee, Halter & Griswold LLP, Cleveland, OH, for plaintiff.

Charles D. Underwood, Columbus, OH, for defendant.

## ORDER ON MOTIONS FOR SUMMARY JUDGMENT

DONALD E. CALHOUN, Jr., Bankruptcy Judge.

The matters before the Court are the Motion for Summary Judgment filed by Defendant Andrew J. Magisano ("Magisano"); the Motion for Summary Judgment filed by Plaintiff PaineWebber Incorporated ("PaineWebber"); and the subsequent responses and replies. Both parties assert that no genuine issues of material fact exist, and that the Court is in a position to decide the Motions for Summary Judgment based on the pleadings filed.

This Court is vested with jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b) and the General Order of Reference entered in this district. This is a core proceeding under 28 U.S.C. § 157(b)(2)(I).

### I. *Findings of Fact*

PaineWebber hired Magisano to work in its Cleveland, Ohio office in or about May 1988. In or about April 1989, Magisano transferred to PaineWebber's Minneapolis, Minnesota office, and became an account executive. Magisano opened PaineWebber accounts for his client James Jindra ("Jindra") in or about November 1989, and subsequently obtained commissions from stock trades made by Jindra. Magisano was suspended by PaineWebber on September 18, 1991, and subsequently terminated on September 25, 1991, due to the fact that Magisano verbally represented to various banks, including National City Bank of Minneapolis, Park National Bank of St. Louis Park, and Marquette Bank Mound ("the Banks") that Jindra had funds in his PaineWebber accounts far in excess of the actual funds on deposit. There is no dispute that Magisano made such misrepresentations to the Banks, and provided PaineWebber forms and information to Jindra knowing that such actions could (and ultimately did) induce the Banks to make loans to Jindra.

Park National Bank of St. Louis filed an action in the Minnesota state court against Magisano, Jindra and PaineWebber for losses resulting from defaults under loans made to Jindra based on Magisano's misrepresentation of funds on deposit in Jindra's accounts. National City Bank of Minneapolis filed a similar action against Jindra and PaineWebber. Those two lawsuits were subsequently consolidated. PaineWebber filed a cross-claim against Magisano in the Park National Bank case and a third-party complaint against Magisano in the National City Bank case. PaineWebber subsequently settled with the Banks for payment in the combined amount of $330,000.00. On January 17, 1993, PaineWebber dismissed its state court action against Magisano.

On or about November 18, 1992, Jindra and Magisano were indicted for bank fraud and aiding and abetting bank fraud in the United States District Court in Minnesota. On January 29, 1993, Magisano plead guilty to Count I of the indictment (bank fraud) in violation of 18 U.S.C. § 1344[1]. In June 1995, PaineWebber filed a civil action against Magisano in the United States District Court for the District of Minnesota seeking judgment of $330,000.00, the amount paid pursuant to the settlements reached with the Banks, under the theories of contribution, misappropriation of confidential information and breach of fiduciary duty. On June 24,

---

1. *18 U.S.C. § 1344. Bank Fraud:*
    Whoever knowingly executes, or attempts to execute, a scheme or artifice—
    (1) to defraud a financial institution; or
    (2) to obtain any of the moneys ... [of] a financial institution, by means of false or fraudulent pretenses, representations, or promises;
    shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both.

1996, the United States District Court for the District of Minnesota granted summary judgment to PaineWebber against Magisano in the sum of $330,000.00. This adversary action was commenced by PaineWebber on May 12, 1997, seeking a determination that the judgment it obtained against Magisano is not discharged by Magisano's Chapter 7 bankruptcy proceeding pursuant to 11 U.S.C. § 523(a)(2)(A) and 11 U.S.C. § 523(a)(4).

## II. *Conclusions of Law*

Rule 56(c) of the Federal Rules of Civil Procedure, incorporated by Bankruptcy Rule 7056 provides:

> [Summary judgment] . . . shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

The purpose of a motion for summary judgment is to determine if genuine issues of material fact exist to be tried. *Lashlee v. Sumner*, 570 F.2d 107, 111 (6th Cir.1978). The party seeking summary judgment bears the initial burden of asserting that the pleadings, depositions, answers to interrogatories, admissions and affidavits establish the absence of genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir.1989). The burden on the moving party is discharged by a "showing" that there is an absence of evidence to support a nonmoving party's case. *Celotex Corp.*, 477 U.S. at 325, 106 S.Ct. 2548. Summary judgment will be appropriate if the nonmoving party fails to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof. *Celotex Corp.*, 477 U.S. at 322, 106 S.Ct. 2548. Thus, the ultimate burden of demonstrating the existence of genuine issues of material fact lies with a nonmoving party. The evidence must, however, be viewed in the light most favorable to the nonmoving party. *Lashlee*, 570 F.2d at 110–111.

The nonmoving party must do more than rest upon the allegations found in the pleadings, and must demonstrate that a genuine issue exists for trial through his or her own affidavits, depositions, answers to interrogatories, and admissions on file. The mere existence of a scintilla of evidence in support of a proposition will be insufficient to overcome a properly pleaded motion for summary judgment, and no issue will remain for trial unless there is sufficient probative evidence for a jury to return a verdict for that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). As in all dischargeability litigation, the plaintiff has the burden of proving all requisite elements by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 283, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). The exceptions to dischargeability of debts set forth in 11 U.S.C. § 523 are to be "strictly construed in favor of the debtor." *In re Pauley*, 205 B.R. 501, 505 (Bankr.W.D.Mich. 1997), *quoting Gleason v. Thaw*, 236 U.S. 558, 562, 35 S.Ct. 287, 59 L.Ed. 717 (1915).

PaineWebber seeks a determination that its claim against Magisano is excepted from discharge under 11 U.S.C. § 523(a)(2) and (4). The Court will begin its analysis with the cause of action under § 523(a)(4). A discharge under 11 U.S.C. § 727 does not discharge an individual debtor from any debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement or larceny." 11 U.S.C. § 523(a)(4). No allegations of embezzlement or larceny are made against Magisano. "The phrase 'while acting in a fiduciary capacity' clearly qualifies the words 'fraud or defalcation' ..." 4 COLLIER ON BANKRUPTCY § 524 10[1][c] (15th ed.1997). PaineWebber asserts that its claim against Magisano is not dischargeable under § 523(a)(4) based on Magisano's fraud or defalcation while acting in a fiduciary capacity. PaineWebber asserts that Magisano acted in a fiduciary capacity based on Magisano's employment with PaineWebber, and the Minnesota District Court holding that Magisano had breached "a fiduciary duty" to PaineWebber.

To establish that a debt should be excepted from discharge under 11 U.S.C.

§ 523(a)(4), a plaintiff must prove the existence of an express trust as to the property at issue, that the debtor was acting in a defined fiduciary capacity, and that a claim was created by the debtor's fraud or defalcation while acting in that fiduciary capacity. *Capitol Indem. Corp. v. Interstate Agency Inc. (In re Interstate Agency, Inc.),* 760 F.2d 121, 124 (6th Cir.1985). The existence of an express trust requires a clearly defined trust *res,* an unambiguous trust relationship, and specific, affirmative duties undertaken by a trustee. *In re Pauley,* 205 B.R. 501, 513 (Bankr.W.D.Mich.1997); *Carlisle Cashway, Inc. v. Johnson (In re Johnson),* 691 F.2d 249, 252–253 (6th Cir.1982). It is not enough to simply allege or prove the existence of an employee-employer relationship, or to prove that an implied fiduciary duty existed and was breached.

■ Case law in the Sixth Circuit uniformly recognizes a distinction between a common law fiduciary relationship, and the "fiduciary capacity" within which a debtor must be acting for a fraud or defalcation to be excepted from discharge under 11 U.S.C. § 523(a)(4). "The term 'fiduciary' applies only to express or technical trusts and does not extend to implied trusts which are imposed on transactions by operation of law as a matter of equity." *Pauley,* 205 B.R. at 513, *quoting Johnson,* 691 F.2d at 251–252; *In re Brady,* 101 F.3d 1165, 1173 (6th Cir.1996). The definition of a fiduciary under § 523(a)(4) is narrower than the traditional definition, and requires the existence of technical or express trusts. *Johnson,* 691 F.2d at 249; *In re Bachman,* 203 B.R. 637, 639 (Bankr.S.D.Ohio 1996); *Highland v. Hix (In re Hix),* 161 B.R. 401, 404 (Bankr.N.D.Ohio 1993).

■ A principal-agent relationship alone is insufficient to constitute a fiduciary relationship for purposes of § 523(a)(4). *In re McQueen,* 102 B.R. 120 (Bankr.S.D.Ohio 1989). The Sixth Circuit recently analyzed the elements of § 523(a)(4), stating that "we are guided by our previous decision [in *Interstate Agency* ] in siding with those courts which adopt the narrow interpretation of the term ['fiduciary capacity']." *In re Garver,* 116 F.3d 176, 179 (6th Cir.1997). The *Garver* Court noted that the definition of "defalca-

tion" set forth in *Interstate Agency* "focuses upon the embezzlement, misappropriation, or failure to properly account for 'trust funds', [and] necessarily implies the existence of an express or technical trust relationship." *Garver,* 116 F.3d at 179.

The Minnesota District Court's order granting summary judgment to PaineWebber refers to breach of a fiduciary duty between Magisano and PaineWebber. However, the type of fiduciary relationship subject to that decision was not defined. PaineWebber has neither alleged nor proven the existence of the type of fiduciary relationship required to invoke 11 U.S.C. § 523(a)(4), and merely referring to the employee-employer relationship is insufficient. *See, McQueen, supra; In re Landrin,* 173 B.R. 307, 311 (Bankr. S.D.N.Y.1994); *Ohio Co. v. Maynard (In re Maynard),* 153 B.R. 933, 935 (Bankr. M.D.Fla.1993).

■ "[T]he debtor must hold funds in trust for a third party to satisfy the fiduciary relationship element of the defalcation provision of § 523(a)(4)." *Garver,* 116 F.3d at 179. There is no evidence of funds held in trust by Magisano either for PaineWebber or the defrauded banks. "Fiduciary capacity" under § 523(a)(4) modifies both fraud and defalcation, and "is limited to only those situations involving an express or technical trust relationship arising from placement of a specific *res* in the hands of the debtor (citation omitted)." *Garver,* 116 F.3d at 180. PaineWebber has failed to meet its burden of proving the existence of the type of fiduciary capacity required for application of § 523(a)(4), and its motion for summary judgment on that basis is denied. There being no evidence of an express trust and specific trust *res,* and no fiduciary capacity other than at common law, Magisano's motion for summary judgment under 11 U.S.C. § 523(a)(4) is well taken, and is granted.

■ The analysis of PaineWebber's cause of action under 11 U.S.C. § 523(a)(2)(A) is more complicated. 11 U.S.C. § 523(a)(2)(A) excepts from discharge any debt "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained, by ... false pretenses, a false repre-

sentation, or actual fraud, other than a statement respecting the Debtor's or an insider's financial condition . . ." 11 U.S.C. § 523(a)(2)(A). In Magisano's Opposition to Plaintiff's Motion for Summary Judgment, Magisano states that "it is conceded that *if* [the Banks] were creditors of Debtor [Magisano], that their claims would be nondischargeable pursuant to Section 523(a)(2)(A) based on debtor's false representations to them regarding the account balances in debtor's client/customer Jindra's accounts." Defendant's Opposition to Plaintiff's Motion for Summary Judgment, pp. 1–2. Magisano appears to concede that but for PaineWebber's settlement with the Banks, the claims of the Banks against Magisano would be excepted from discharge under § 523(a)(2)(A). Defendant's Opposition to Plaintiff's Motion for Summary Judgment, p. 4. In light of this admission, and Magisano's guilty plea in the Minnesota District Court to bank fraud, this Court could be precluded from reviewing the elements of fraud underlying the debts owing from Magisano to the Banks, such as whether the Banks' reliance on Magisano's false representations were justifiable. *See Field v. Mans*, 516 U.S. 59, 116 S.Ct. 437, 133 L.Ed.2d 351 (1995). *Garner*, 498 U.S. at 284 n. 11, 111 S.Ct. 654; *In re Calvert*, 105 F.3d 315, 318 (6th Cir.1997).

The civil judgment held by PaineWebber against Magisano is for contribution, breach of (common law) fiduciary duty, and misappropriation of confidential information. In its order granting summary judgment to PaineWebber on these causes of action, the district court held that collateral estoppel precluded Magisano from challenging his culpability for the amount paid by PaineWebber in settlement of the actions brought by the Banks. That court ruled that Magisano had failed to "aver any facts showing any culpability on the part of any person at Paine-Webber other than himself." June 24, 1996 Order of U.S. District Court, District of Minnesota, Granting [PaineWebber's] Motion for Summary Judgment, p. 4. However, the district court did not grant judgment to

PaineWebber for fraud, and the preclusive effect of that judgment, despite the surprising concessions made by Magisano (or his counsel) as to the nature of the underlying debts, is uncertain.

PaineWebber argues that summary judgment is appropriate under § 523(a)(2) on the basis that the "Minnesota court found as a factual matter in granting summary judgment for PaineWebber that the Debtor committed fraud. (Citing Minnesota Judgment at 1). These factual findings are entitled to collateral estoppel effecting this proceeding." PaineWebber's Motion for Summary Judgment, p. 14. Magisano was found guilty of, indeed plead guilty to "bank fraud". However, a finding that Magisano committed statutory bank fraud as defined by 18 U.S.C. § 1344 is not equivalent to a finding that Magisano defrauded PaineWebber.[2] Paine-Webber argues that all elements of fraud, with the exception of "reliance", have already been determined by the Minnesota Court ruling. Unfortunately, PaineWebber has not accurately articulated the analysis required for this Court to make a determination as to the dischargeability of the obligation owing to PaineWebber under § 523(a)(2). Similarly, counsel for Magisano has neglected to raise many critical issues supporting Magisano's position, and has made some questionable statements in the pleadings filed on behalf of Magisano.

11 U.S.C. § 523(a)(2)(A) is normally asserted by a creditor claiming that a debt is excepted from discharge due to the fact that the debtor defrauded *that specific creditor*, and that specific creditor loaned money or extended credit to the debtor as a result of the debtor's fraud or false representation. Under those circumstances, the debtor wrongfully obtains money from the defrauded creditor, and § 523(a)(2) is asserted to preclude the debtor from benefitting from the money wrongfully obtained. This case is different. Here, Magisano did not obtain any funds from the Banks. The proceeds

---

**2.** In fact, if the Banks had not settled with Paine-Webber, and remained creditors of Magisano, it is uncertain whether Magisano's guilty plea under 18 U.S.C. § 1344 would have estopped him from challenging the dischargeability of the claims under § 523(a)(2) based on the differences between those statutes.

from the fraud flowed to Jindra, not Magisano.

The Banks' state court proceedings against PaineWebber and Magisano, in which allegations were made both against Magisano and PaineWebber for negligence, breach of contract, and fraud, resulted in a settlement and dismissal of those actions. PaineWebber could have pursued any fraud claim against Magisano in the state court actions either directly, or as the Banks' assignee. Instead, PaineWebber brought a new complaint in district court against Magisano, pleading and obtaining judgment on entirely different, non-fraud based causes of action. Paine-Webber argues that Magisano benefitted from his actions inasmuch as the loans obtained by Jindra allowed him to make trades in his PaineWebber accounts, Magisano received commissions from such trades, and Magisano maintained Jindra as a client all to Magisano's benefit in his position with Paine-Webber. Magisano argues that there is no evidence that he defrauded or intended to defraud PaineWebber. Both arguments are correct, but miss the mark.

It is undisputed that Magisano owes a debt to PaineWebber by virtue of the $330,000.00 judgment for *contribution, misappropriation of confidential information, and breach of fiduciary duty*. It is also undisputed that PaineWebber has no judgment against Magisano for fraud. PaineWebber argues that it can maintain a cause of action under § 523(a)(2) based on the "bank fraud" committed by Magisano against the Banks, and the resulting loss suffered by PaineWebber by virtue of its settlement with the Banks. PaineWebber concludes that Debtor's guilty plea to bank fraud "conclusively establishes the requisite intent to defraud." Paine-Webber Motion for Summary Judgment, p. 13. Further, PaineWebber argues that there is no genuine issue of material fact with respect to reliance either from the perspective of the Banks or PaineWebber.

To an extent, the Court agrees with the assertions made by PaineWebber. In fact, Magisano admits that the Banks relied on his misrepresentations in extending credit to Jindra, though he does not admit to the justification of the Banks' reliance. *See*

*Mans, supra.* Further, 18 U.S.C. § 1344 can be predicated on a mere attempt to defraud, and may not require any showing of reliance. There is no allegation, or inference that can be drawn that Magisano defrauded Paine-Webber. PaineWebber attempts to "bootstrap" the "bank fraud" plea of Magisano onto its non-fraud based claim for contribution, breach of fiduciary duty and misappropriation of confidential information. However, PaineWebber has no basis upon which to assert the nature of the original claim owing from Magisano to the Banks, and has failed to present any evidence or allegation that it is entitled to do so by way of either assignment or subrogation. It would appear to have been simple for PaineWebber to have obtained an assignment of the nature of the Banks' claims, but it failed to provide any evidence of such rights, and it remains questionable as to whether such rights would preclude further inquiry from this Court.

This case has similarities to *In re Menna,* 16 F.3d 7 (1st Cir.1994). Menna had retained Century 21 Balfour Real Estate ("Balfour") to sell his business, and the buyers brought an action in state court against Menna for fraud, and against Balfour for negligent misrepresentation. In the state court action, Balfour filed a cross-claim against Menna for equitable indemnification. The purchasers of the business were awarded damages in the amount of $128,500.00, jointly and severally against Menna and Balfour, and judgment was entered in favor of Balfour on its cross-claim for indemnification against Menna inasmuch Balfour's negligence made it less culpable than Menna's fraud.

After the purchasers of the business recovered $110,000.00 from Balfour on their judgment, Menna filed for relief under Chapter 7 of the Bankruptcy Code. Balfour subsequently filed an adversary action to determine that its indemnification claim against Menna was excepted from discharge under 11 U.S.C. § 523(a)(2)(A) and (a)(6). Both parties filed motions for summary judgment, and the bankruptcy court found that Balfour's indemnification claim was dischargeable. *Century 21 Balfour Real Estate v. Menna (In re Menna),* 152 B.R. 5, 6 (Bankr. D.Me.1993). The district court affirmed, as

did the First Circuit Court of Appeals, which noted that exceptions to discharge are narrowly construed to further the "fresh start" policy of the Bankruptcy Code, and found that Balfour's claim was dischargeable. Balfour argued that its claim was excepted from discharge inasmuch as it stemmed from Menna's fraudulent conduct toward the purchasers of the business, as evidenced by the state court fraud judgment. Similarly, Balfour argued that its indemnification claim was a result of willful and malicious conduct pursuant to 11 U.S.C. § 523(a)(6) as evidenced by the punitive damage verdict awarded to the purchasers of the business against Menna. *Menna,* 16 F.3d at 9. Of significance to the First Circuit Court of Appeals was the concession by Balfour that it had made no allegations, and that no competent evidence existed that Menna acted with malice toward, or intended to defraud Balfour. *Id.,* at 9.

There is no evidence that Magisano acted with malice toward, or intended to defraud PaineWebber. This element of fraud is required for PaineWebber to meet its burden of proving fraud by a preponderance of the evidence. *Garner,* 498 U.S. at 287–290, 111 S.Ct. at 660–61. As in *Menna,* PaineWebber points solely to Magisano's fraudulent intent against third parties (the Banks). In the underlying state court actions filed by the Banks against PaineWebber, Magisano and Jindra, PaineWebber was alleged to have been negligent, as was Balfour in the *Menna* case. PaineWebber has failed to cite a single case where a creditor that was not the target of the Debtor's fraud was successful in prosecuting an exception to discharge under 11 U.S.C. § 523(a)(2), absent a contractual right of subrogation. PaineWebber has not asserted contractual, statutory or equitable subrogation rights, nor has it asserted that it obtained an assignment of the nature of the Banks' claims, and the Court is not willing to make such arguments on PaineWebber's behalf.[3]

The First Circuit noted that "Balfour cites no case in which it has been argued, let alone decided, that the nonfraud-based indemnification claim of an entity whose negligence has combined with the fraud of its joint tortfeasor to cause injury to a third party is nondischargeable in the bankruptcy of the negligent tortfeasor. Given the strict construction afforded all dischargeability exceptions under § 523(a) (citation omitted), we have been provided with neither authority nor reason to extend the statutory language as urged by Balfour." *Menna,* 16 F.3d at 10. In some respects, the case before the Court is even more extreme than *Menna.* Here, PaineWebber makes no allegations that there were any representations made to it by Magisano, or that PaineWebber relied on any representations made by Magisano.

Prior to the Supreme Court's ruling in *Kawaauhau v. Geiger,* 523 U.S. 57, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998), PaineWebber may have had a successful argument that the debt owing to it from Magisano was excepted from discharge under 11 U.S.C. § 523(a)(6). Magisano's intentional acts (misrepresentations to the Banks) necessarily, at least arguably, led to injury both to the Banks and PaineWebber. However, this basis of excepting the debt from discharge was not raised by PaineWebber (as it should have been since this case was submitted before the *Geiger* ruling). *Geiger* requires both an intentional act, and an intent to injure for a successful cause of action under § 523(a)(6). There are neither allegations nor inferences from the record that Magisano intended to injure PaineWebber. In fact, under *Geiger,* Magisano could argue that he did not even have the requisite intent to injure the Banks based on the existence of intervening factors between his acts and the injury, i.e., Jindra obtaining the bank loans and subsequently defaulting.

The obligation owing from Magisano to PaineWebber is based on contribution, breach of an implied fiduciary duty, and misappropriation of confidential information.

---

**3.** It is uncertain whether PaineWebber would have a statutory right to subrogation under 11 U.S.C. § 509 based on the fact that its settlement with, and payment to the Banks occurred prior to the filing of Magisano's bankruptcy proceed-

ing. *See In re Four Star Const. Co.,* 151 B.R. 817 (Bankr.N.D.Ohio 1993) (11 U.S.C. § 509(a) does not apply when the co-debtor has paid the entire debt prior to bankruptcy).

PaineWebber has failed to prove a basis for this Court to bootstrap the nature of Magisano's actions against the Banks onto PaineWebber's non-fraud based claims. Nor has PaineWebber provided a basis to allow it to assert the nature of the claims of the Banks by assignment or subrogation. PaineWebber has provided no support that its claims against Magisano fall squarely within any of the specifically enumerated exceptions to discharge set forth in 11 U.S.C. § 523(a). As in *Menna*, PaineWebber has failed to provide the Court with any cases in which a non-fraud-based contribution claim is excepted from discharge absent a contractual right of subrogation. *Menna*, 16 F.3d at 10. The Banks brought causes of action against PaineWebber in the Minnesota state courts for negligence, and instead of litigating the issue, PaineWebber found it appropriate to pay a substantial settlement to avoid prosecution. In making this decision, PaineWebber also deprived Magisano of an opportunity to argue that the Banks' reliance on his verbal misrepresentations were not justified. *Mans, supra.*

Under the circumstances of this case, and upon a review of all pleadings filed by the parties, the Court does not find that PaineWebber has satisfied its burden of proving that its claim against Magisano should be excepted from discharge. Exceptions to discharge are construed narrowly in favor of the debtor, and PaineWebber has not adequately demonstrated that its claim fits squarely within § 523(a)(2). The Court finds that PaineWebber's Motion for Summary Judgment under 11 U.S.C. § 523(a)(2) is not well-founded, and it is hereby DENIED. Further, the Court finds that Magisano's Motion for Summary Judgment pursuant to 11 U.S.C. § 523(a)(2) is supported by the record, and the only affidavits filed as part of either motion for summary judgment (those filed by and in support of Magisano), and hereby grants Magisano's Motion for Summary Judgment pursuant to 11 U.S.C. § 523(a)(2).

Based on the foregoing, and the finding that Magisano's Motion for Summary Judgment is well-taken under both 11 U.S.C. § 523(a)(2) and (a)(4), the Court hereby finds, and judgment is hereby GRANTED in favor of Magisano, and the debt owing from Magisano to PaineWebber is dischargeable.

IT IS SO ORDERED.