OPINION
Appellant Paula K. Ohman appeals the decision of the Stark County Court of Common Pleas, Family Court Division, granting a divorce on grounds of incompatibility from Appellee Craig E. Ohman. The relevant facts leading to this appeal are as follows.
Appellant and appellee were married on June 13, 1978. There are two children born as issue of the marriage, both of whom are emancipated. Appellant is employed by Kaufmann's Department Store. Appellee has been employed since 1997 by Ohman Distributors, Inc., a supply company founded by his parents.
Appellant filed a complaint for divorce on July 18, 2000. Appellee filed an answer and counterclaim for divorce on August 10, 2000. On March 8, 2001, appellant filed a motion requesting permission to conduct an appraisal of Ohman Distributors. Appellee opposed the appraisal, arguing via a memorandum filed with the court that he had no ownership interest in the business, a Subchapter "S" Ohio corporation. On April 11, 2001, a magistrate reviewed the motion and memorandum in opposition, and issued an order denying permission to conduct the appraisal. On June 4, 2001, the trial court conducted an evidentiary hearing solely for the purpose of determining ownership of Ohman Distributors. The court rendered a judgment entry shortly thereafter, concluding that the company "was not legally conveyed to the Defendant [appellee] and his sister by their mother who remains the sole shareholder of Ohman Distributors, Inc." Accordingly, the court found the company was not a marital asset.
On July 2, 2001, the trial court heard the remaining issues in the case. A final judgment entry was rendered on July 9, 2001. Although the court held that appellee did not have an ownership interest in Ohman Distributors, the court determined that an equal division of property would be inequitable based on its conclusion that appellee would have a benefit of one-half interest in the company at a future point after the termination of the marriage. Pursuant to the final entry, appellant received $67,636 of the parties' assets, while appellee was awarded $50,113.
Appellant thereafter filed her notice of appeal, and herein raises the following sole Assignment of Error:
 I. THE TRIAL COURT ERRED IN NOT FINDING THAT OHMAN DISTRIBUTORS INC. WAS A MARITAL ASSET SUBJECT TO DISTRIBUTION BY THE COURT IN THE DIVORCE ACTION.
 I
In her sole Assignment of Error, appellant argues that the trial court erred in failing to find that Ohman Distributors, Inc. was a marital asset subject to distribution upon the termination of the parties' marriage. We disagree.
We generally review the overall appropriateness of the trial court's property division in divorce proceedings under an abuse of discretion standard. Cherry v. Cherry (1981), 66 Ohio St.2d 348. However, with the enactment of R.C. 3105.171, the characterization of property as separate or marital is a mixed question of law and fact, not discretionary, and the characterization must be supported by sufficient, credible evidence.Chase Carey v. Carey (Aug. 26, 1999), Coshocton App. No. 99CA1, unreported; see, also, McCoy v. McCoy (1995), 105 Ohio App.3d 651, 654;Kelly v. Kelly (1996), 111 Ohio App.3d 641. Once the characterization has been made, the actual distribution of the asset may be properly reviewed under the more deferential abuse-of-discretion standard. R.C.3105.171(D); Blakemore v. Blakemore (1983), 5 Ohio St.3d 217. In order to find an abuse of discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. Id. The trial court's property division should be viewed as a whole in determining whether it has achieved an equitable and fair division. Briganti v. Briganti (1984), 9 Ohio St.3d 220, 222. It is pursuant to this standard of review that we review appellant's Assignment of Error.
Although it is undisputed that the stock certificate was never transferred from appellee's mother, appellant first argues, relying on testimony presented at the special hearing on June 4, 2001, that "* * * all parties believed a sale of the company had taken place." Appellant's Brief at 6. In 1998, a meeting took place between the company's accountant, Jay Barton, and appellee, appellee's sister (Michelle Reed), appellee's parents, and an attorney. At the meeting, the topic of appellee and Reed's purchase of the business was discussed. Barton recalled that when he left, it was his understanding that a transfer of ownership was going to take place and that appellee and Reed were going to buy the company. Barton testified that he thereafter prepared corporate tax returns for the company and appellee's mother, as well as personal income tax returns for appellee's mother, appellee and Reed. From July 1998 through December 1999, Barton divided the income of the company equally between appellee and Reed. He stated that from July 1998 until the time he found out that the appellee's mother's stock certificate had not been transferred, he considered the owners of the business to be appellee and Reed. According to Reed, who also testified on the subject, $15,000 was paid out of corporate profits to get started with the purchase of the business. A lease was also signed by appellee and Reed on behalf of the company to lease the warehouse from appellee's parents. Reed stated that there was a verbal agreement to pay $1500 per month for the business until her father died, although no purchase price was agreed upon. Additionally, when appellee began participation in the discovery process of the divorce action at issue, he provided interrogatories stating he was part owner of the business.
However, evidence was also presented that appellee and Reed filed amended personal income tax returns when it was discovered that the stock had never been transferred to them. Reed also testified that a purchase price was not reached due to uncertainty about appellee's financial situation and his ability to continue in the business, leading to the languor in arranging a transfer of the company stock. Additionally, as the trial court specifically recognized, no marital funds were expended to purchase any purported interest in the company. The record further indicates that appellee submitted supplemental discovery responses upon realization of the non-transfer of the stock.
Appellant also urges the applicability of the resulting trust doctrine regarding ownership of Ohman Distributors. "A resulting trust has been defined as `one which the court of equity declares to exist where the legal estate in property is transferred or acquired by one under facts and circumstances which indicate that the beneficial interest is not intended to be enjoyed by the holder of the legal title.'" (Citation omitted). First Nat. Bank of Cincinnati v. Tenney (1956), 165 Ohio St. 513,515. A resulting trust arises "under circumstances that raise an inference that the transferor, or person who caused the transfer, did not intend the transferee to take a beneficial interest in the property."Union S. L. Assn. v. McDonough (1995), 101 Ohio App.3d 273, 276.
The aforesaid definitions presuppose that a transfer of the legal estate has actually occurred. As appellee in the case sub judice points out, the "legal estate" of Ohman Distributors, i.e., the stock certificate, has never been transferred but has remained with appellee's mother. Furthermore, the resulting trust doctrine has historically been applied to just three situations: "(1) Purchase-money trusts; (2) instances where an express trust does not exhaust the res given to the trustee; and (3) express trusts which fail, in whole or in part." FirstNational Bank at 515-516, citing 2A Bogert on Trusts, 405, Section 451. Of these, the second and third categories are immediately excluded under the present facts, as there was no attempt to create an express trust. This leaves "purchase-money trust" as the remaining category. Appellant thus directs us to a classic example of a purchase-money trust, found in 91 Ohio Jurisprudence 3d (1989), Trusts, Section 220: 220:
 Thus, where stock is purchased with children's money and for their account it becomes their property, even though the children are minors and, for convenience, it is registered in the name of their mother. In such a case, the children are the beneficial owners of the stock, the mother holds the title as trustee under a resulting trust, and the children, upon the death of a mother, are entitled to have the legal title to the stock transferred forthwith.
We are unpersuaded that a purchase-money trust device is applicable herein. The only money paid to appellee's mother came from her company's earnings and not from funds belonging to either appellee or Reed. An essential element of a resulting trust is the intention of the parties.Gabel v. Richley (1995), 101 Ohio App.3d 356, 363. The burden of proof to establish a resulting trust is clear and convincing evidence. SeeGertz v. Doria (1989), 63 Ohio App.3d 235, 237. We find appellant failed to meet her burden for the applicability of a resulting trust remedy under the facts and circumstances of this case.
Therefore, we find the characterization of Ohman Distributors as a non-marital asset was supported by sufficient, credible evidence. Upon review of the entire record, we conclude that the trial court formulated an equitable and fair division of property. Briganti, supra.
Appellant's sole Assignment of Error is overruled.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas, Domestic Relations Division, Stark County, Ohio, is affirmed.
Costs are assessed to appellant.
Hon. W. Scott Gwin, P. J. Hon. William B. Hoffman, J. Hon. John W. Wise, J. concur.